15789

AIKEN PETROLEUM CO. v. NATIONAL PETROLEUM UNDER WRITERS OF WESTERN MILLERS MUT. FIRE INS. CO. OF KANSAS CITY, MO.

(36 S. E. (2d), 380)

*Messrs. Williams & Busbee,* of Aiken, Counsel for Appellant,

*Messrs. Hendersons & Salley,* of Aiken, Counsel for Respondents,

December 13, 1945.

PER CURIAM: This action, based upon the amended and supplemental complaint, was brought to reform and to enforce as reformed, an insurance policy issued by the de-

fendant in 1943, covering certain properties owned by the plaintiffs which were destroyed by fire on October 20, 1943. The reformation sought is the elimination from the policy in question, and also from a policy written in 1942, of a one hundred per cent. co-insurance clause, which the plaintiffs allege was improperly, inequitably and fraudulently inserted. The general theory of the complaint is based upon the doctrine of imputed knowledge, and it was upon this theory that the case was tried. The defendant contends that the policy as written, including the co-insurance clause represents the real contract of the parties, and it offered to pay the sum of $2,-138.93, which is the amount due on the policy with the co-insurance clause included.

Plaintiffs recovered judgment against the defendant for the full amount of their loss, with interest, and the defendant has appealed.

The plaintiffs, Geddings Cushman and Lois D. Cushman, are co-partners trading as Aiken Petroleum Company, wholesale distributors of petroleum products. In 1937, their business was conducted as a corporation under the name of Aiken Petroleum Company, with Geddings Cushman as the manager. Geddings Cushman and his wife, Lois D. Cushman, were the only stockholders. In 1938, the charter of the corporation was surrendered, and the business was conducted in the same manner and in the same name as a partnership, Mr. Cushman being at all times the active manager thereof.

Some time in the year 1937 Mr. Cushman desired to procure fire insurance on the bulk plant and warehouse of the company situated in the City of Aiken, and interviewed a local insurance agent, Mr. Durban, with this in view. He was told by this agent that it would be necessary that a co-insurance clause be attached to the policy, the effect of which would be to limit the liability of the insurance company writing the policy in the event of fire, to about fifty per cent. of

the loss. Cushman was altogether unversed in insurance matters, and up to that time ignorant of the character and effect of a co-insurance clause. As a result of the information given to him by the insurance agent, he determined that he would never take out any policy of insurance with such a clause in it.

Some time during the same year, but subsequent to his conversation with Mr. Durban, Mr. Perry Moses, Jr., of the firm of Perry Moses & Son, of Sumter, South Carolina, general agents for a number of mutual insurance companies, visited Mr. Cushman at Aiken upon his own initiative, and solicited the business of writing the insurance on plaintiffs' warehouse and contents, consisting of gas and oil. He was told by Mr. Cushman of his insuperable objection to any fire insurance policy containing a co-insurance clause, and of his determination never to take out insurance with such a provision included in the policy.

According to the testimony offered by the plaintiffs, Mr. Moses, in order to obtain the business of the plaintiffs, agreed and guaranteed for the mutual company in which he would write the policy insuring the plaintiffs, and for any mutual company that he would write future policies in, that the rate charged would be low, and that no co-insurance clause would ever be inserted in any policies that his company or companies would ever write on any properties owned or controlled by Mr. Cushman. In August, 1937, the Perry Moses Agency issued to the plaintiffs a policy of fire insurance on their warehouse and tanks, with the National Petroleum Mutual Fire Insurance Company of Philadelphia as insurer, which policy contained no co-insurance clause. This policy expired a year later. A similar policy in the same company was issued by the Moses Agency in 1938; and a third policy was likewise issued without the co-insurance clause in the year 1939.

In the year 1940, the National Petroleum Mutual Fire Insurance Company of Philadelphia was taken over by the defendant, Western Millers, which absorbed its business and continued its policies. Western Millers was likewise represented by Perry Moses & Son, as its general agents.

In August, 1940, Western Millers issued to the plaintiffs its policy insuring the property of the plaintiffs against loss by fire, such policy containing no co-insurance clause. Upon the expiration of this policy in 1941, it issued a similar policy which also excluded the clause objectionable to the plaintiffs. However, the renewal policies issued in 1942 and 1943 covering plaintiffs' property included a co-insurance clause, which the plaintiffs assert was included fraudulently and without notice to them.

The evidence for the plaintiffs tends to show that after examining the first three or four policies and noting that no co-insurance clause was embodied in them, Mr. Cushman did not inspect the policies issued by the defendant in 1942 and 1943, but filed them away in his safe, relying upon the agreement he had with the Moses Agency, and the knowledge of such agreement imputed to the defendant, that no such clause would ever be included in the policies issued on his property. It was only after the fire which destroyed the property that he learned that a co-insurance clause was embraced in the policies issued in 1942 and 1943.

During all of these years—from 1937 to 1943—the plaintiffs' dealings with the initial insurance company, National Petroleum Mutual Fire Insurance Company of Philadelphia, and later with the defendant, were transacted and conducted solely through Perry Moses, Jr., of the firm of Perry Moses & Son, general agents for both of the named companies. All of the policies referred to were issued and countersigned by Perry Moses, Jr., and the letterheads of this firm carried the

inscription that this company was general agent for the National and also for Western Millers.

Several letters were introduced in evidence: On July 8, 1940, which was the first year the insurance was written by the defendant, Mr. Perry Moses, Jr., in a letter to Mr. Cushman, enclosed a policy, stating that it "is renewal of insurance on your bulk plant we have been carrying for the past several years." In a letter of November 4, 1940, again writing for the defendant, Western Millers, Mr. Moses, inquiring for certain information from Mr. Cushman, assured him that "upon receipt of this information we will issue endorsement accordingly, and we want to assure you that this coverage is binding as of November 2, and that you have the protection that you desire." Again, in a letter of March 22, 1941, plaintiffs' insurance was renewed by the defendant through the Moses Agency for an increased amount, and in forwarding the policy the statement was made, "we are granting complete protection under the new contract."

On February 18, 1942, the following letter was written to Mr. Cushman, and was introduced in evidence by the defendant:

"Mr. Geddings Cushman

Aiken Petroleum Company

Aiken, South Carolina.                    February 18, 1942.

Dear Mr. Cushman:

We have carried the fire insurance on your bulk plant and contents for the past several years in very satisfactory manner and we want you to know that we appreciate this business. The home office has agreed with the Southeastern Underwriters Association to follow their rates less 20% in advance and as your policy comes up for renewal on March 22 we have obtained the Bureau rates with the idea of tell-

ing you how we can handle this renewal and getting your permission to renew the coverage.

The published rate is $3.63. The rate that we can use will be 80% of that rate, which is $2.90. This is a material increase over what we charged you last year, and we are therefore, writing you for your permission to renew at this increased rate.

. You will have sufficient time to shop around if you so desire and we are, therefore, not renewing this till we hear from you. Of course, we are anxious to retain this business but we can appreciate your view point when you consider the increased cost.

Thanking you again for all past favors and assuring you of our desire to continue to write this business, we are,

Yours very truly,

Perry Moses and Son,

PM, Jr. :EE                     By P. Moses, Jr."

It is the contention of the defendant that this letter put Mr. Cushman upon notice that the policy to be issued in 1942 would carry a co-insurance clause because it referred to the Bureau rates of the Southeastern Underwriters Association, as to which he had been advised in 1937 by Mr. Durban, the local agent hereinbefore referred to, that insurance companies belonging to this Association issued policies containing a co-insurance clause. The plaintiffs contend that this letter failed to advise them of anything except that the premium would be raised to $2.90 per hundred, and that their policy would be renewed with the same coverage and provisions as were contained in all of the earlier policies, and without the objectionable clause.

When the case came on for trial in the Circuit Court, three issues of fact were framed and submitted to the jury on mo-

tion of the plaintiffs, under Section 593 of the Code and Rule 28 of the Circuit Court. All of these issues, subjoined, were found by the jury agreeably to the plaintiffs' contention. The questions submitted were as follows:

1. "Did Perry Moses, Jr., approach Geddings Cushman seeking to write insurance on the Aiken Petroleum Company's properties in 1937, and did he assure Mr. Cushman, and agree with him, as is alleged in the complaint, that he (Mr. Moses) guaranteed for the mutual company that he would write the policy in, and for any mutual company that he in the future might write policies in, that no co-insurance clause would be inserted in any of the policies that his company or companies would ever write on any properties that Mr. Cushman might manage or be interested in?"

2. If the first question is answered in the affirmative, the jury will also answer the second question, which is:

"When the policies were written in Western Millers and were transmitted to the plaintiffs in 1942 and 1943, with one hundred per cent. co-insurance clauses inserted therein, did Perry Moses, Jr., have in mind and memory the assurances that he had given Geddings Cushman referred to in the first question submitted to the jury?"

3. If both the first and second questions are answered in the affirmative, then the jury will answer the third question, which is:

"Under the testimony in the case and the charge of the court, did the policies of 1942 and 1943 fail to constitute the true contracts of insurance between the parties, and was said failure due, as is alleged in the complaint, to inequitable conduct, deceit, concealment, imposition or fraud on the part of the defendant, acting through its agent, and to mistake on the part of the plaintiff induced by inequitable conduct, deceit, concealment, imposition or fraud on the part of the de-

fendant, without disqualifying negligence on the part of the plaintiffs?"

All of these questions were answered by the jury in the affirmative.

No motion for a new trial was made as to any of the findings of the jury, and in his decree following the verdict, the Circuit Judge held that the verdict was supported by the evidence, and it was accordingly accepted and affirmed. Hence, under the recent decisions of this Court, and under Article V, Section 4 of the Constitution, the facts as found by the jury are settled, and are not subject to review. *Momeier v. John McAlister, Inc.,* 190 S. C., 529, 3 S. E. (2d), 606; *Johnstone v. Matthews,* 183 S. C., 360, 191 S. E., 223; *In Re Nightingale's Estate,* 182 S. C., 527, 189 S. E. 890.

We have given the factual background of the case at some length in order that the legal issues presented by the appeal may be clearly understood. It should be added that the defendant, through its witness, Perry Moses, Jr., definitely denied the agreement with the plaintiffs to the effect that he would not issue any insurance policy covering the property in question with any co-insurance clause included therein. This witness likewise denied testimony adduced by the plaintiffs that after the fire loss he told Mr. Cushman over the telephone that no con-insurance clause should have been inserted in the 1943 policy; that its insertion was due to his mistake, and that he would attempt to get the company to rectify it.

In its demurrer to the amended and supplemental complaint, the defendant invoked the statute of frauds—Sec. 7044—contending that the contract alleged was oral and could not be performed in the space of one year, the position being that the alleged oral agreement of 1937 between Cushman and Perry Moses & Son, general agents, extended to and contemplated successive annual renewals, in violation of the statute.

We think that this contention not only overlooks the specific allegations of the complaint, but ignores the theory upon which the case was tried. The plaintiffs allege that the defendant in issuing these policies of insurance was "bound legally, equitably, and in good conscience on account, both of the existence of the agreement and understanding hereinbefore referred to, *and on account of knowledge imputed to it thereof at the time each policy herein referred to was issued,* and when each policy was issued to respect and abide by their aforesaid agreement and understanding, and not to issue a policy with a co-insurance clause embodied therein upon any property operated by Geddings Cushman * * * as otherwise said policy or policies would not constitute the true contract of insurance between the insurer and the insured * * *."

The defendant's argument likewise apparently overlooks this statement in the agreed statement of facts in the transcript of record: "The general theory of the complaint is based upon the doctrine of imputed knowledge." The statute of frauds was deemed inapplicable, both by Judge Bellinger, in passing upon the demurrer, and by Judge Henderson in his final decree. They both held, and we think correctly so, that the action is not based upon the oral agreement or understanding reached between Mr. Moses and Mr. Cushman in 1937, but that the real theory of the complaint is that with the knowledge hereinbefore fully set out imputed to it, there was fraud or inequitable conduct on the part of the defendant in issuing the policy sued on—the evidence as to the assurance given in 1937 being for the purpose only of establishing the fact that Mr. Moses acquired this knowledge at that time; and, as the jury found under the second submitted question, he retained it in his mind and memory when the 1942 and 1943 policies were issued.

Perhaps the major issue involved in this case has to do with the doctrine of imputed knowledge and under what cir-

cumstances knowledge acquired by an agent prior to his agency may be imputed to his principal.

There is a conflict of authority on the question, but the more logical rule, and that which is supported by the great weight of recent authority, is that knowledge of an agent acquired prior to the existence of the agency may be chargeable to the principal if it is clearly shown that the agent, while acting for the principal in a transaction to which the information is material, has the information present in his mind, or where it was acquired so recently or under such circumstances, that it will be presumed to have been in his mind and memory at the time of the transaction in question; provided the information was not obtained under such circumstances as to make it the legal duty of the agent not to divulge it to the principal. 2 C. J., Sec. 547, Page 867; 2 Am. Jur., Sec. 376, Page 294, Restatement, Agency, Section 276; Annotations, Ann. Cas. 1912D, 95; 24 Am. St. Rep., 228.

Mr. Perry Moses, Jr., testified with reference to the letter of Feb. 18, 1942, hereinabove quoted, which was sent to Mr. Cushman just one month prior to the expiration of the 1941 policy, and which had to do with the renewal of the policy. He stated that although nothing was said with reference to the intention of the defendant to insert a co-insurance clause in the 1942 policy, it was his purpose when he wrote the letter, to embody the provision in the policy of 1942. By referring to the letter, it will be noted that it deals with the question of rates as promulgated by the Southeastern Underwriters Association; and it is the contention of the defendant, as heretofore stated, that this reference to rates should have brought to the mind of Mr. Cushman the memory of the conversation he had had in 1937 with Mr. Durban, a local insurance agent of Aiken, to the effect that a policy is-

sued under such circumstances would necessarily include a co-insurance clause.

We think the conclusion of the trial judge in his final decree, based upon the verdict of the jury, is unassailable. It seems clear that the knowledge which Mr. Moses had must be held to be imputed to his principal, the defendant in this case. According to the verdict of the jury, Mr. Moses had full knowledge of Mr. Cushman's objection to co-insurance, and this objection was present in his mind and memory when he issued the policies of 1942 and 1943.

A very clear statement of the law of imputed knowledge is found in a concurring opinion by Mr. Justice Cothran in the case of *Bank of Anderson v. Breedin,* 119 S. C., 39, 111 S. E., 799. An authoritative case which has been frequently cited and quoted from is the case of *In Re Distilled Spirits* (U. S.), 11 Wall., 356, 20 L. Ed., 167, where it was held that notice given to or information acquired by an agent in a former and independent transaction, will be imputed to his principal if it be clearly shown by the evidence that the agent had in fact retained the previously acquired information in his mind and memory while engaged in a subsequent transaction on behalf of his principal.

It will be recalled that when Mr. Moses first acquired the knowledge that the plaintiffs would not accept a policy in which a co-insurance clause was incorporated, he was representing the corporation (National Petroleum Mutual Fire Insurance Company of Philadelphia) which the present defendant took over and succeeded; and he was representing it upon the very subject-matter of this action, which was the insuring of the property managed and operated by Geddings Cushman. It will also be recalled that when he wrote and countersigned the 1940 and 1941 policies, not in the first-named company, but in the defendant company itself, he was careful, as general agent of the defendant, to act upon the

previously acquired knowledge, and to leave out the co-insurance clause.

The jury found that there was fraud on the part of the defendant's agent in inserting the co-insurance clause in the 1942 and 1943 policies without calling the attention of the plaintiffs to such insertion, and in leading them to think that no change had been made in this respect. The Circuit Judge in his decree found that under the testimony there was actual fraud, which under the law was imputable to the defendant.

It is contended by the defendant that its demurrer to the complaint should have been sustained, and that various other motions made to terminate the case should have been granted, upon the ground that the contract as alleged was discriminatory and indefinite, and uncertain in every particular essential to a valid contract, including amount, rate, property covered, and ownership of property. In support of the asserted claim as to discrimination, various sections of the Code are cited: 8003, 8005, 8012, 8013, and 8019, all of which have been carefully examined and considered.

With reference to the issue of discrimination, it should be repeated that the plaintiffs are not attempting to enforce a contract. Their contention is that when the defendant voluntarily elected to issue the policies in 1942 and 1943, which it could have refused to issue, it should have eliminated the co-insurance clause.

Furthermore, as soundly pointed out in the decree of the trial judge, regulations and rates fixed by a Rating Bureau or Association have never been given the force of law in South Carolina. In this State rates are not fixed by any public body; a rating bureau is a voluntary organization; an insurance company can become a member of it if it so desires, and it can withdraw from it at will. The Insurance Commissioner under Section 8003 may address inquiries to the company or to a rating bureau, and have it to file its

rates. And under Section 8016 the Insurance Commissioner may, after a full hearing subject to appeal, hold that a rate is discriminatory. In fact, it appears that there may be two or more rating bureaus in the same territory so far as the law is concerned.

As was correctly stated by the trial judge in his decree:

"In this cause the plaintiffs are not seeking to procure a discrimination in insurance rates, since in paragraph 11 of the complaint they ask that the instruments in question be reformed by the elimination of the co-insurance clause, with any proper rate adjustment.

"In the case of *Crosby v. Metropolitan Life Insurance Company,* 167 S. C., 255, 166 S. E., 266, and *Hood v. Life Insurance Company of Tennessee,* 173 S. C., 139, 175 S. E., 76, the defendants contended that under another statute, section 7994 of the Code, which provides that no insurance company shall 'make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy,' plaintiff was estopped from asserting his claim, and the court said that 'the statute was never intended to shield a fraud'."

The testimony in this case shows that Geddings Cushman was wholly unlearned in the matter of rates, as are most members of the general public, and relied altogether upon the insurance company and its agent; and it would be going too far to hold that the adoption of rates by an unofficial voluntary bureau would be binding upon him under such circumstances. Furthermore, the evidence shows that there are insurance companies in South Carolina which actually do write fire insurance polices on oil tanks and their contents, without co-insurance clauses. The defendant could have withdrawn from the rating bureau rather than commit a fraud upon the plaintiffs. Certainly the fact that the defendant had

joined the rating bureau, as indicated in its letter to Mr. Cushman on February 18, 1942, did not relieve it of the duty of informing the plaintiffs that a co-insurance clause had been or would be inserted in the policies of 1942 and 1943, especially when their attention was called only to the change in the rates.

Nor is there any merit in the contention that the contract is indefinite and uncertain. As shown by the record, the plaintiffs paid without question any premium rate that the defendant through the Moses Agency saw fit to fix. There was never any question about the identity of the property to be insured or the ownership thereof. On the ground of indefiniteness, the defendant cites the case of *Fulmer v. London, Liverpool & Globe Fire Ins. Co.*, 172 S. C., 525, 174 S. E., 466. The later case of *Gaskins v. Firemen's Ins. Co. of Newark, N. J.*, 206 S. C., 213, 33 S. E. (2d), 498, likewise sets forth the necessary elements of an oral contract to insure. But in neither of the foregoing cases was a policy of insurance issued.

Where no specific insurance company is designated by the parties, the omission is fully taken care of, and the identity of the insurance company ascertained, when the policy is actually issued, as was done in this case. *Bales v. General Insurance Company of America* (Idaho), 24 P. (2d), 57; *Preferred Risk Fire Ins. Co. v. Neet* (1935), 262 Ky., 257.

But, as hereinbefore pointed out, the contention that the plaintiffs are endeavoring to enforce an indefinite contract has no relevancy here. The only matter involved, as shown by the complaint and the theory upon which the case was tried, is merely that the one hundred per cent. co-insurance clause was improperly inserted in the 1942 and 1943 policies.

Defendants further contend that there can be no imputed knowledge where there has been fraudulent action on the

part of the person or the corporation to whom the knowledge is imputed, because the question of actual intention is involved in fraud cases; it being argued that actual intention can only be judged by actual knowledge, and not by imputed or constructive knowledge.

It is the law of this State, and appears to be the universal rule, that reformation of a written instrument may be obtained where there is mistake on the part of the plaintiff, and inequitable conduct, deceit, concealment and imposition of fraud on the part of the defendant, inducing the plaintiff's mistake. *Gowdy v. Kelly,* 185 S. C., 415, 194 S. E., 156; *Jumper v. Queen Mab Lumber Co.,* 115 S. C., 452, 106 S. E., 473; *Forrester v. Moon,* 100 S. C., 157, 84 S. E., 532; *Kennerty v. Etiwan Phosphate Co.,* 21 S. C., 226, 53 Am. Rep., 669.

In the case at bar, the defendant has received from the plaintiffs premiums which it has retained and from which it has benefited through the fraudulent conduct of its sole agent, Perry Moses Agency; and under these circumstances the defendant cannot be heard to say that the fraud of its agent may not be imputed to it.

As was said by the United States Supreme Court in *In Re Armstrong v. Ashely,* 204 U. S., 272, 51 L. Ed., 482:

"The fact that those agents committed a fraud cannot alter the legal effect of their acts or of their knowledge with respect to the company in regard to third parties who had no connection whatever with them in relation to the perpetration of the fraud, and no knowledge that any such fraud had been perpetrated. There is no pretense of any evidence that the defendants had any connection with these alleged frauds, and no pretense that they had any knowledge of their existence, if they did exist. In such case the rule imputing knowledge to the company by reason of the knowledge of its agent remains."

And, upholding the principle hereinabove announced, see *Webb v. Graniteville Mfg. Co.,* 11 S. C., 396, 32 Am. Rep., 479; *Bank of Anderson v. Breedin,* 119 S. C., 39, 111 S. E., 799, particularly the concurring opinion of Mr. Justice Cothran; and *Atlantic Mills v. Indian Orchard Mills,* 147 Mass., 268, 9 A. S. R., 698.

Subsequent to the fire which destroyed the plaintiffs' storage tanks and warehouse on October 23, 1943, the plaintiffs rebuilt their plant at a new location about a block away from the old site. At its new location, the plaintiffs obtained an insurance policy from the Pacific Mutual Fire Insurance Company on its storage tanks and contents. Over objection, this policy was introduced in evidence by the plaintiffs; its issuance to the plaintiffs was alleged in the complaint. It was admitted in evidence upon the ground that it was relevant to show that a policy could be obtained, and was obtained, by the plaintiffs without any co-insurance clause, and the Court allowed it in response to the allegation in the complaint, although the location of the replacement tanks was different and the premium rate was lower.

In our opinion, the question of the rate at which this insurance was written is not significant. The point involved was only that insurance could be and was obtained without a co-insurance clause, on the plaintiffs' steel storage tanks and their contents, and the admission of the policy strongly tended to answer the contention of the defendant that no insurance company could issue a policy on such tanks and their contents without incorporating a co-insurance clause. The Court committed no error in holding that the policy was admissible in evidence on the ground of its relevancy.

Error is assigned because of the following charge given by the Judge to the jury:

"You must find whether or not the plaintiffs were guilty of negligence, and if you find that the plaintiffs were guilty

of negligence you must find specifically in connection with that, whether or not the defendant was guilty of fraudulent conduct."

The argument of the defendant is that where the plaintiff in a reformation case is guilty of negligence, and there is no fraud on the part of the defendant, he should not be granted relief, as fraud cannot arise from constructive knowledge imputed to the principal.

By the verdict of the jury it was determined that there was no disqualifying negligence on the part of the plaintiffs. The Court immediately following the language complained of, further told the jury:

"I charge you also, if one of the parties to a contract has been guilty of fraud, equity may reform the instrument notwithstanding the other party's negligence."

The exception raising this issue is overruled, not only by reason of what we have heretofore said with reference to imputed knowledge, but upon the authority of the following cases: *Central Ice Cream & Candy Co. v. Home Ins. Co.*, 171 S. C., 162, 171 S. E., 797; and *Jumper v. Queen Mab Lumber Co.*, 115 S. C., 452, 106 S. E., 473.

Error is assigned because the Court refused to charge the following request submitted by the defendant:

"The jury will answer the third question 'No,' even if they find that the plaintiffs were justified in the claimed belief that the policy was not to have the co-insurance clause attached, if they further find that such a policy could not be sold and delivered in this state covering the oil tanks and contents in question because of a prohibitive legal regulation applying to the insurer."

The request was refused upon the ground that it was not embraced within any one of the three issues which were

framed and submitted to the jury. The requested instruction involved only the question of law which the trial judge passed upon and correctly decided in the decree adversely to the defendant. There is no merit in the exception raising this question.

Error is assigned because of the following charge given by the judge to the jury:

"The fact that an insured person accepts a policy of fire insurance without noticing a mistake does not preclude him from having the mistake corrected, even though he fails to read the policy over or carelessly reads it."

It is contended that the foregoing instruction embodied a charge on the facts. The language quoted is substantially a direct quotation from the opinion in the case of *Central Ice Cream & Candy Co. v. Home Ins. Co.*, 171 S. C., 162, 171 S. E., 797.

Even if it be conceded that this excerpt borders upon a factual assumption, when the whole charge is considered, it is clear that the jury could not have been misled nor the defendant prejudiced. In addition to this, the trial judge in his final decree reached the same conclusion as the jury, holding that "there was no disqualifying negligence on the part of the plaintiffs."

The trial judge, in closing his final decree, stated:

"I am of the opinion that the defendant should be credited with an amount sufficient to cover in full the premiums which would have been properly charged for the two years, 1942 and 1943, if the two policies had been written without the co-insurance clause. It appears that there was no testimony at the trial establishing in a clear and accurate manner the amount of this adjustment. I think, therefore, that it should be provided that the plaintiffs shall remit from the amount

of the judgment a sum to take care of the necessary adjustment."

No agreement having been reached by the parties, additional testimony was taken and submitted to the judge from Miss Lucile Woodward, a local insurance agent with twenty years' experience. From this additional evidence, the judge determined in a supplemental decree that the defendant should be allowed as a fair and equitable adjustment on the policies issued in 1942 and 1943 the total sum of $164.92. This amount was deducted from the amount set forth in the first decree, namely: $4,205.33, leaving the judgment in favor of the plaintiffs in the sum of $4,040.41.

The final question presented by the decree assigns error in taking the testimony of Miss Woodward to determine an equitable rate when none was provided in the alleged oral agreement.

It is argued on behalf of the defendant that the Court took this testimony in order to supply the important element of rates to be charged, and fixed the rate on the testimony of the agent of an insurance company which is a subscriber to the rules and regulations of a rating bureau, but at the same time denying the right of the defendant to the privileges of one who is a subscriber to the regulations attaching a co-insurance clause.

We see no error in the procedure followed by the trial judge in granting this rebate to the defendant, and he committed no error in making his own independent findings of fact.

Judgment affirmed.

Mr. Chief Justice D. Gordon Baker and Messrs. Associate Justices E. L. Fishburne, T. H. Stukes, C. A. Taylor and G. Dewey Oxner concur.