Barry Dean ROGERS, by his Guardian ad Litem, Luther James Rogers, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

COUNTY OF SUMTER, Third Party Defendant.

Civ. A. No. 8784.

United States District Court
D. South Carolina,
Florence Division.

July 23, 1969.

C. Weston Houck, John L. Nettles, Florence, S. C., for plaintiff.

Klyde L. Robinson, U. S. Atty., by Thos. P. Simpson, Asst. U. S. Atty., Charleston, S. C., for defendant United States.

G. Werber Bryan, Sumter, S. C., for County of Sumter.

ORDER

SIMONS, District Judge.

The plaintiff instituted this action seeking the recovery of damages for personal injuries allegedly sustained due to the negligence of a United States Marshal under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) [1] and 2671 et seq.

[1]. "(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction

Plaintiff's complaint alleges that he was tried in the United States District Court for the Eastern District of South Carolina, Columbia Division, for a federal crime, that he was found guilty, and was placed on probation. The complaint further alleges that at the time the plaintiff was convicted and placed on probation, the court issued an order that required the United States Marshal for the Eastern District of South Carolina to provide the plaintiff with transportation and subsistence from Columbia, South Carolina to his home in Loris, South Carolina; that pursuant to the order, the Marshal or one of his duly authorized deputies took custody of the plaintiff in Columbia and assumed the responsibility of providing him with transportation to his home, that he was taken to Sumter, South Carolina where he was released into the custody of one Henry Boone Brabham; and that the plaintiff went to Brabham's home on the night of July 22, 1964, whereupon he was forcibly confined, assaulted, attacked, and otherwise severely abused and injured by Brabham. It is further alleged that the Marshal knew, or should have known, or ascertained, that Brabham was mentally and sexually unbalanced, being what is commonly referred to as a sadist, and that his release of the plaintiff into his custody in the nighttime in Sumter, South Carolina constituted a violation of the order of the court, and that such negligent conduct on his part proximately caused plaintiff to sustain severe, painful and permanent injuries to his person. The defendant answered with a general denial for a first defense; for a second defense the defendant alleged that the plaintiff was also negligent, and that such negligence contributed to and was the proximate cause of the incident and resulting damages complained of; for a third defense

the government alleged that if the plaintiff were negligently released to Brabham such release was effected by the County of Sumter in its role as an independent contractor, or by its duly authorized agent acting within his employment with the County of Sumter; and finally, for a fourth defense, the government asserted that the plaintiff assumed the risk of his resulting injuries, and that of his own volition he accompanied Brabham to the latter's home, thereby receiving the injuries complained of.

The County of Sumter was joined as a third party defendant pursuant to the government's motion under Rule 14 of the Federal Rules of Civil Procedure, it appearing that the County of Sumter might be liable to the United States under a contractual arrangement for the keeping of federal prisoners, should the United States be liable to the plaintiff. The case was tried before me without a jury in Columbia, South Carolina on April 1 and 2, 1969.

In its consideration and determination of this case, this court is controlled and directed by Rogers v. United States, 397 F.2d 12 (1968), which reversed Rogers v. United States, 267 F.Supp. 25 (1967), wherein summary judgment was granted in favor of the defendant. The Fourth Circuit reversed and remanded the case for trial stating:

"On remand, the district court should consider, among other questions whether (a) Marshal Rowland knew or should have known in the exercise of due care of Brabham's reputation and (b) whether the conduct of Jailer Beatson, who made the telephone contact with Brabham and who seemingly knew or should have known of Brabham's perversion, can be imputed to the United States in view of the contract providing for the keeping of fed-

of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

eral prisoners in the Sumter County Jail. Depending upon his ultimate findings of fact, we think the trial judge should consider whether or not the marshal exercised less than ordinary care when he failed to make perfectly clear to the probationer the choices that were properly open to him under the order of the court— spending the night in jail, telephoning his parents or other friends in Loris to come for him, or renting a hotel room for the night at the government's expense. Certainly if Jailer Beatson is found to be an agent of the United States and if it is further found that he knew of Brabham's reputation, it would seem to follow that due care required him to warn Rogers of the danger of accompanying Brabham."

## FINDINGS OF FACT

1. The plaintiff, now a resident of Lexington, North Carolina, formerly lived in Loris, South Carolina which is located approximately 100 miles from Columbia, South Carolina. During the year 1964 plaintiff was arrested by the federal authorities on the charge of interstate transportation of a stolen motor vehicle and was placed in the Sumter County, South Carolina Jail awaiting trial. At that time he was seventeen years of age and was approaching his eighteenth birthday in August of that year.

2. John A. Rowland was appointed United States Marshal for the Eastern District of South Carolina on or about April 13, 1961 and was acting in that capacity during all relevant times. His office had taken plaintiff into custody at Conway, South Carolina on the federal offense and had placed him in pretrial confinement in the Sumter County Jail, according to the terms of a contract[2] between the United States and Sumter County.

3. After having remained in the Sumter County Jail for approximately two months awaiting trial, on the morning of July 22, 1964 plaintiff was transported from the jail to the United States District Court in Columbia where he entered a plea of guilty to the interstate transportation charge and was placed on five years probation by the Presiding Judge. When the fact that plaintiff was without funds and had no transportation to his home in Loris, South Carolina was called to the judge's attention, he issued a routine order requiring:

"That the United States Marshal for the Eastern District of South Carolina shall provide the probationer with transportation in accordance with 18 U.S.C. § 4283[3] from Columbia, South Carolina to Loris, South Carolina, together with a reasonable amount for subsistence."

Pursuant to such order the Marshal's office contacted local bus stations in Columbia seeking immediate transportation for plaintiff to his home that afternoon. Upon determining that no bus transportation was available that day Mr. Rowland, the Marshal, and his Deputy, Terry Pitts, advised plaintiff of that fact and suggested that he could spend the night in the nearby Lexington County Jail if he so desired, and that he would be furnished a transportation request for bus transportation to Loris the next day. Thereupon, the plaintiff advised the Marshal that he preferred to go back

2. The United States and Sumter County had entered into a contract whereby Sumter County was to provide the services of "safe keeping, care, and subsistence of persons held under authority of any United States statute * * *" (Government's Ex. # 1).

3. "A court of the United States when placing a defendant on probation, may direct the United States marshal to furnish the defendant with transportation to the place to which the defendant is required to proceed under the terms of his probation and, in addition, may also direct the marshal to furnish the defendant with an amount of money, not to exceed $30, for subsistence expense to his destination. In such event, such expenses shall be paid by the marshal." 18 U.S.C. § 4283.

to Sumter where he had left his clothes in the jail that morning, and that he could stay overnight there with a friend if he were unable to get a bus from Sumter to Loris. It is noted that Sumter is much nearer to the Town of Loris than is Columbia. At that time Marshal Rowland explained to plaintiff that he was on probation and was free to go and do as he pleased. Upon request of plaintiff Marshal Rowland gave him a ride to Sumter in his automobile. They left Columbia about 4:00 p. m. arriving at the Sumter County Jail between 5:00 and 5:30 p. m. The plaintiff rode in the front seat of the Marshal's car which the Marshal himself was driving. He was not placed under any restraint, and was not handcuffed as were the other prisoners being transported by the Marshal back to the Sumter County Jail for incarceration. When they arrived at the Sumter Jail all of the prisoners were carried in and placed in the cell block. The plaintiff himself went inside the lobby of the jail along with the Marshal who told Jailer Beatson that plaintiff had been placed on probation, that he had met a friend at the jail that he wanted to contact so he could spend the night with him. The Marshal asked the jailer to assist plaintiff in contacting his friend. The Marshal also made arrangements for the Jailer to permit plaintiff to spend the night in the Sumter County Jail and to give him breakfast the next morning if they were unable to get in touch with plaintiff's friend. This arrangement was agreeable to the plaintiff. The jailer tried to contact plaintiff's friend, Brabham, by telephone without success before the Marshal left the jail about 6:00 p. m.

4. The Marshal testified, and there is no credible evidence to the contrary, that plaintiff never told him the identity of his friend. The Marshal made no inquiry concerning the identity, reputation or character of plaintiff's friend. Plaintiff, however, did tell the Marshal that his friend had visited him on several occasions while he was in custody in the Sumter County Jail, had brought him and his fellow prisoners food to eat, had talked to him about going to Sunday School and had read the Bible to him. The Marshal testified that if he had had any unfavorable information about plaintiff's friend he of course would have suggested that he not visit him, and that he naturally assumed that his friend was an all right person, otherwise Jailer Beatson and Sheriff Parnell would not have permitted him to frequent the jail and socialize with their prisoners.

5. Before the Marshal and his deputies left the Sumter County Jail that afternoon they issued a transportation request to plaintiff for bus transportation from Sumter to Loris. The Marshal did not advise plaintiff that the government would provide him with a hotel or motel room if he desired one, but he did make arrangements for him to spend the night at the Sumter County Jail and to have breakfast there the next morning if he were unable to contact his friend. At no time after his return to Sumter was plaintiff placed in custody, nor was his liberty restrained in any way. A Deputy Marshal executed a release card for plaintiff at the Sumter County Jail which he delivered to the jailer; he was in no respect a prisoner and was not being held under authority of any United States Statute. Thus, he was not covered by the contract between Sumter County and the United States. (Note 2, *supra*).

6. The credible evidence establishes that plaintiff's friend Henry Brabham, who had lived in Sumter practically all his life, had no reputation in the community for violence prior to July 1964. Sheriff Byrd Parnell, who has been Sumter County Sheriff for over seventeen years, testified that he had known Brabham for twenty years and that although he did not have the best reputation he had no reputation for violence and had had only one charge of assault and battery placed against him prior to July 1964, which was never brought to trial. Deputy United States Marshal Ray Gaddy who had been a Deputy Marshal

for nineteen years testified that between the years 1953 and 1957 while he was in Florence, South Carolina as a deputy marshal he had used Brabham as a guard for prisoners on two or three occasions; that he stopped using him about 1957 and 1958 when Brabham told him he had been indicted for burning an automobile. He further testified that Brabham appeared to be an "odd ball", that he heard he had been dealing in illegal whiskey, and he had also heard that he was a sexual pervert. Deputy Marshal Gaddy had no connection with nor knowledge of the handling of plaintiff by the Marshal's office on the occasion in question, and knew nothing about plaintiff's plan to visit or spend the night with Brabham in Sumter. The three members of the United States Marshal's office who handled the custody and transportation of plaintiff on July 22, 1964 and who were present at the Sumter County Jail that afternoon when plaintiff was attempting to get in touch with his friend Brabham had never met nor had any dealings with, nor had ever heard anything derogatory about Brabham at that time. Neither is there any credible evidence to establish the fact that Sumter County Jailer Beatson [4] who attempted to assist plaintiff in contacting his friend Brabham knew anything adverse about Brabham which would have made it dangerous for plaintiff to visit with him.

7. In reference to Brabham's reputation in and around Sumter one Harold Odom, a barber in the City of Sumter, testified for the plaintiff, stating that he had known Brabham for many years, that he had frequented his barbershop which is located near the Sumter County Courthouse, that he came from a good family but he was considered "a little odd." On first being questioned about his reputation he testified that he did not know about his reputation as to violence. Later upon further questioning by plaintiff's counsel he stated that Brabham's reputation as to violence was bad. However, on cross examination he

conceded that it may have been after he learned of Brabham's brutal attack upon plaintiff that he formed an opinion that Brabham's reputation for violence was bad. The testimony of this witness was not very convincing and has been given very little weight by the court.

8. Plaintiff testified that neither the Marshal nor anyone else ever told him that he was free to go and do as he pleased. He further testified that when the Marshal took him back to Sumter that afternoon he told the Sumter Jailer to lock him up; that he was accordingly taken upstairs and locked in a cell where he remained for about 2 hours until 7:00 p. m. when Brabham came to the jail; that the Sumter Jailer then released him and told him he could go with Brabham. Plaintiff further stated that he believed that he was still a prisoner, that no one offered him any money for a motel room or food, and that he thought he would be required to spend the night in the Sumter Jail if he did not go with Brabham. Plaintiff's testimony in this regard was directly contradicted by the testimony of Marshal Rowland and his two deputies, Pitts and Davis, who were present with the Marshal and plaintiff in Columbia after his having been placed on probation and after their arrival back at the Sumter County Jail that afternoon. Thus, the court credits the Marshal's and his deputies' testimony as opposed to the plaintiff's uncorroborated version of what occurred.

9. Henry Brabham had not arrived at the Sumter County Jail when the Marshal and his deputies left there about 6:00 p. m. to return to Columbia. However, he did come to the jail around 7:00 p. m. (It is not clear whether he came of his own volition on one of his customary visits, or whether he was actually contacted by the jailer). Shortly thereafter the plaintiff of his own volition and without the suggestion of anyone else departed the jail with Brabham,

4. It is noted that Jailer Beatson was present in court during the trial of the case but he was not called as a witness by any of the parties.

going to his home for the purpose of spending the night with him.[5] Some time after arriving at Brabham's home Brabham forced plaintiff to remove his clothes, handcuffed his wrists, chained his feet, and beat him over a long period of time with an object similar to an automobile fan belt. Between the beatings Brabham poured turpentine into his cuts and wounds, and later he immersed plaintiff in a bathtub of scalding water which blistered his skin. After tormenting and unmercifully beating plaintiff for several hours Brabham telephoned a local law enforcement official who came to Brabham's home. The officer carried plaintiff to the local hospital where he was placed under the care of Dr. C. H. Andrews until August 7th when he was transferred to the South Carolina State Hospital in Columbia after going berserk the night before. He remained in the State Hospital from August 7th until the following January. During this period he was given twelve shock treatments, as well as other treatment and medication for his mental condition. Upon his release he attempted to go back to high school at Tabor City, North Carolina. He was unable to make passing grades because of his inability to concentrate, his continuous worrying about himself, and his feeling of despondency and apprehension that his fellow students were all against him. He left school in the middle of the year to work at a furniture manufacturing plant in Thomasville, North Carolina where he remained for about two years earning $1.80 an hour. He is currently engaged in carpenter-type work in the construction field, earning $2.25 an hour. He is married and has a six months old son.

10. As a result of the horrible and sadistic treatment of plaintiff by Brabham he was severely and seriously injured and made to suffer excruciating pain, all of which contributed to and precipitated his development of the mental condition requiring that he be committed to the South Carolina State Hospital. Plaintiff continues to suffer from nervousness, tenseness, and despondency; he is not able to sleep well, his energy is limited, his interest is short, and he has undergone a decided change in personality. Prior to this occurrence he apparently had a cheery disposition and a winsome personality. He also was ambitious and wanted to better himself with a high school education. He now is not as radiant, is highly nervous and slow, and does not look or act like the person he was prior to this occurrence. He has obviously suffered serious physical injuries, much excruciating pain and mental anguish, and has developed as a result thereof a mental illness of prolonged and probably permanent duration.

11. At the time of his injuries plaintiff was almost eighteen years of age, and under the South Carolina Mortuary Statute, as amended, plaintiff had a life expectancy of 52.19 years. In view of the physical injuries, pain, suffering, and mental anguish and impairments suffered and to be suffered in the future by plaintiff, and the resulting diminution in his earning capacity, the court finds that if this were a case of liability on the part of defendant, then plaintiff has been damaged in the sum of Fifty Thousand ($50,000.00) Dollars actual damages.

## CONCLUSIONS OF LAW

The court has jurisdiction of the parties and the subject matter of this action by virtue of the Federal Tort Claims Act, 28 U.S.C.A. 1346(b) and 2671 et seq. The substantive law of the State of South Carolina is applicable to the issues of liability and damages herein presented.

Under the Act sovereign immunity from tort suits for damages has been waived by the United States under the

---

5. In a pretrial deposition plaintiff testified that he and Brabham on one of the latter's visits to the jail had discussed the possibility of plaintiff's spending the night with Brabham if he should be given a probationary sentence.

conditions as limited therein. Thereunder the government is liable in damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Section 1346(b), *supra.* From the foregoing it is essential that a claimant seeking damages in a tort suit against the United States under the Act must prove that a government employee or agent, while acting within the scope of his office or employment, was guilty of negligent or wrongful conduct, either by act of omission or commission, which proximately caused injuries and/or damages to his person or property, under such circumstances as would have made a private person liable to him, under the law of the state where the alleged negligent or wrongful conduct occurred. Thus, plaintiff to be entitled to recover in this case must prove by the preponderance of the evidence that the United States Marshal, or his deputies Pitts or Davis, or some other employee or agent of the United States, was guilty of negligent conduct which constituted a breach of some duty owed by him, or them, to plaintiff which proximately resulted in his injuries and damages. Under the applicable South Carolina law, there can be no liability unless there has been a breach of some duty owed to plaintiff by the government agents or employees. South Carolina Electric and Gas Co. v. Utilities Construction Co., 244 S.C. 79, 135 S.E.2d

613 (1964); Kershaw Motor Co. v. Southern R. Co., 136 S.C. 377, 134 S.E. 377, 47 A.L.R. 858. Therefore, the Tort Claims Act may be invoked only on a "negligent or wrongful act or omission" of a Government employee. It created no absolute liability of the Government under any circumstances. Thus, there can be no liability under the Act without fault or breach of duty. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

During all times relevant to the issues in this case Marshal Rowland and his deputies, Pitts and Davis, in all of their dealings with plaintiff were acting within the scope of their office and employment as United States Marshals; Defendant United States would therefore be fully responsible for all injuries and damages proximately resulting to plaintiff as a result of their negligence or breach of duty, if any, toward him.

As commanded by the Fourth Circuit Court of Appeals in its opinion in Rogers v. United States, *supra,* the court has carefully considered the question of what duty and responsibility, if any, the marshal owed to plaintiff under the court order issued by the presiding judge pursuant to 18 U.S.C.A. § 4283, requiring that the marshal provide plaintiff with transportation and subsistence to his home after he was placed on probation by the court.[6]

It is concluded that the Marshal adequately fulfilled his obligation to plaintiff—and the court—under the transportation and subsistence order. He made every reasonable effort to obtain bus transportation from Columbia, and later that same day from Sumter to plaintiff's home in Loris. Upon determining

---

6. At the trial the Marshal testified that, during his tenure in office, when directed by court order to furnish a probationer transportation to his home and subsistence, as he was ordered to do for plaintiff, his office generally furnished bus transportation to his home and provided him with necessary funds for meals, but that his office did not customarily provide lodging as part of the "subsistence".

The court has been unable to find any cases other than that of Judge Russell in Rogers v. United States, *supra,* construing Section 4283 and the Marshal's duties thereunder to a probationer. The court agrees with Judge Russell's construction and interpretation of this Section.

that there were no more busses from either place making the connection that day, he first offered to have plaintiff spend the night in the Lexington County Jail and later that day he arranged to have plaintiff spend the night in the Sumter County Jail, and provided him with bus transportation to Loris the next day. After plaintiff was placed on probation by Judge Hemphill the Marshal explained to plaintiff fully that he was free to go and do as he pleased. It was after this explanation that plaintiff asked for, and the Marshal gave him, a ride to Sumter where he desired to pick up his clothes at the Sumter Jail, and spend the night with "a friend" whom he had met in Sumter. This was his own idea to visit with Brabham. Such action was never suggested by the Marshal, or any of his deputies. Under neither the court order nor in his status as a volunteer in giving plaintiff a ride to Sumter did the Marshal have any legal duty to advise, warn, or select for plaintiff the persons he should associate with. This is especially true since the Marshal did not in fact know, nor, in the exercise of reasonable care, should have known of Brabham's violent propensities. Plaintiff had spent approximately two months in the Sumter Jail, and the arrangements made by the Marshal were agreeable to him.

█ The Marshal did not offer to pay for a hotel or motel room for plaintiff that night in Sumter, but he did explain that he was free to go and do as he pleased, and made arrangements for him to sleep and eat at the Sumter County Jail if he could not locate his friend. Of course, it would have been more preferable for the Marshal to have offered a hotel or motel room rather than a jail cell. As a probationer the Marshal had no power, control or supervision over plaintiff. He had no affirmative duty to direct his personal activities from the time he was given the transportation request from Sumter to Loris. Prior to the time the Marshal had made arrangements for plaintiff to spend the night at the Sumter Jail he had already elected to visit and spend the night with his friend Brabham if he could be located. Neither the Marshal, nor his deputies, Pitts and Davis, knew, or by the exercise of reasonable care should have known, of the violent, sadist, or perverted tendencies of Brabham. The Marshal testified that he was confident that neither Sheriff Parnell of Sumter County, nor Jailer Beatson would have allowed Brabham to visit their prisoners and frequent the jail if they had known of anything bad about him. He further testified that if he had known of anything unfavorable about Brabham, he would have suggested or advised against plaintiff's going with him. It is therefore concluded that the Marshal was not guilty of negligence or breach of duty in carrying out any obligations or duties imposed upon him by Judge Hemphill's order. Neither did the Marshal or his deputies breach any duty toward plaintiff which they reasonably assumed as a volunteer. The Marshal assumed no status as a "good Samaritan." As before stated he fulfilled his obligations to the court, and to plaintiff, if he had any such obligation to the latter under Judge Hemphill's transportation and subsistence order. Since the Marshal had no actual or constructive notice of any bad or unsavory tendencies or reputation of plaintiff's friend Brabham, there was no duty on him under such circumstances to make any inquiry about the friend, or to volunteer any fatherly advice to plaintiff. Plaintiff was an intelligent young man who apparently knew his way around, and, if it could be concluded that the Marshal was negligent for failure to inquire or advise, by the same standard, plaintiff himself should be held to have been contributorily negligent himself, which would bar his recovery. He had met and known Brabham for some two months, thus if he had any doubts or reservations about him, he should have made inquiry before going to his home for the night.

█ There is no credible evidence to establish that Brabham had an unsavory or bad reputation, or a predisposition to

violence prior to the occurrence in question. He had only been arrested on one prior assault charge which was never brought to trial. Under the factual circumstances, the unfavorable information about Brabham which had been gained by Deputy Marshal Gaddy, while using Brabham as a guard for federal prisoners during the years 1953 to 1958, while the former was stationed in Florence, South Carolina, and long before Mr. Rowland was appointed United States Marshal in 1961, cannot be imputed to or chargeable against Marshal Rowland. Gaddy had never had any occasion to impart his knowledge of Brabham to the Marshal, and neither was Gaddy aware of the fact that plaintiff knew or planned to visit Brabham on his return to Sumter. Gaddy had no knowledge of, nor anything to do with, the custody and transportation of plaintiff by the Marshal's office on July 22, 1964. Under such circumstances, Deputy Gaddy's knowledge of Brabham could not be construed as notice to his superior, Marshal Rowland. Nationwide Life Ins. Co. v. Attaway, 4 Cir., 254 F.2d 30; Aiken Petroleum Co. v. National Petroleum Underwriters, 207 S.C. 236, 36 S.E.2d 380.

The court further concludes that Jailer Beatson was not guilty of any actionable negligence, or neglect of duty owed by him or Sumter County to plaintiff, or to the United States, in allowing plaintiff to leave the jail with Brabham, and in not warning plaintiff not to associate with him.

■ Plaintiff failed to prove that Jailer Beatson of the Sumter County Jail either knew, or reasonably should have known, of Brabham's violent, sadistic, or perverted tendencies, and consequently there is no valid basis for finding any negligent conduct on the part of Jailer Beatson, or any other official of Sumter County, which could be imputed to defendant United States. The undisputed evidence is that Brabham frequented the Sumter County Jail during Beatson's tenure as jailer, for the purpose of visiting the prisoners, including plaintiff; that he brought them chicken and other food, read the Bible to them, and was "like a father" to some of the prisoners. There is no evidence of any misconduct, or otherwise objectionable behavior at the jail during such visits. Such conduct without more would surely give no one a reasonable basis to suspect that Brabham was a sadist or a "queer".

■ Further, under the contract between Sumter County and the United States, (Note 2, *supra*), it is concluded that Sumter County was not acting in the capacity of an agent of the United States, but was in fact an independent contractor. Any negligence, if any, on its part, or the part of its agents committed in the scope of their duties, would not be chargeable against defendant United States. South Carolina has consistently followed the general rule that an employer is not liable for the torts of an independent contractor or the latter's employees. Norris v. Bryant, 217 S.C. 389, 60 S.E.2d 844 (1950); Allison v. Ideal Laundry & Cleaners, 215 S.C. 344, 55 S.E.2d 281 (1949); Chatman v. Johnny J. Jones Exposition, Inc., 212 S.C. 215, 47 S.E.2d 302 (1949). A comprehensive discussion of South Carolina law in this regard is contained in 4 S.C.Law Quarterly 150 (1951).

The court concludes that plaintiff has failed to establish that there was any negligence on the part of Sumter County or any of its employees, including Jailer Beatson, which proximately caused or contributed to the injuries and damages suffered by plaintiff. Even if such actionable negligence were established, the same would not be imputed to or chargeable against the United States, since it was acting under its contract as an independent contractor, and not as an agent.

When plaintiff returned to the Sumter County Jail in the late afternoon of July 22, 1964, he was in no sense a prisoner under the custody and control of the Marshal. He was a probationer, subject only to the terms and conditions of his probation which imposed no special duty upon the Marshal toward him. He was a free agent under no restraint, power

of direction or control on the part of the United States Marshal or the County of Sumter. He was not a person "held under authority of any United States Statute." After the Marshal, or his Deputy, signed a release for plaintiff from the Sumter County Jail on their return to Sumter on the afternoon of July 22, 1964 (before Brabham had been contacted or had arrived at the jail), Sumter County and its jailer owed no duty under such contract to the United States. After his release from the jail, Jailer Beatson, as an accommodation to plaintiff and at his request, attempted to contact Brabham.[7]

In view of the foregoing findings and conclusions, it is unnecessary to pass upon the issues raised by the United States' third party complaint against the third party defendant Sumter County. Suffice it to say, however, under the circumstances it would appear that under no theory should the United States be entitled to recover from Sumter County any sum which might be adjudged against it in favor of plaintiff.

It is recognized that plaintiff has suffered severe physical and mental injuries, much anguish, and diminution in his earnings and earning capacity, and will continue to suffer in the future, and the inhuman, fiendish, and brutal attacks by Brabham upon plaintiff are abhorred, nevertheless, under its view of the evidence and the law the court cannot hold defendant liable to plaintiff for such injuries and damages. Plaintiff has failed to establish any actionable negligence or neglect of duty of defendant or its employees upon which an award could be made in favor of plaintiff.

Let judgment be entered in favor of defendant United States, and third party defendant County of Sumter. Each party shall pay his, or its own costs.

And it is so ordered.

---

7. The evidence is unclear as to whether the jailer ever succeeded in making contact with Brabham to request that he come to the jail to see plaintiff, or whether Brabham came to the jail on his own initiative, as one of his routine visits to the prisoners. There is some evidence that plaintiff and Brabham, while the former was in the Sumter County Jail awaiting disposition of his case, had discussed plaintiff's spending the night with Brabham on his way home if he received a probationary sentence in Columbia. Whether Beatson's acts, if found negligent, would give rise to any liability in plaintiff's favor against Sumter County is not before the court, and no finding or conclusion thereabout is intimated, in view of the court's conclusion that plaintiff did not come within the provisions of the contract between Sumter County and the United States.