13490

CROSBY v. METROPOLITAN LIFE INSURANCE CO.

(166 S. E., 266)

*Messrs. Elliott, McLain, Wardlaw & Elliott* and *McDon-ald, Macaulay & McDonald,* for appellant,

*Messrs. Gaston, Hamilton & Gaston,* for respondent, 

October 12, 1932.

The opinion of the Court was delivered by Mr. Justice Stabler.

In September, 1930, the plaintiff brought this action for damages on account of fraud alleged to have been perpetrated upon her by the defendant company. She alleges that in the last days of January, 1930, while one Nettie Archie, a cousin, was visiting her in Chester, S. C., an agent of the defendant called at her home on business of the company and secured from Nettie an application for insurance in the sum of $540.00; that, as an inducement to sell the insurance, it was agreed that, if the plaintiff would pay the premiums, the defendant would make her the sole beneficiary under the policy; that subsequently the defendant issued its policy on the life of Nettie, dated February 3, 1930, and delivered it into the possession of the plaintiff; and that thereafter she paid for the defendant all the premiums due on the policy during the lifetime of the insured, who died on or about July 30, 1930. The plaintiff further alleges that the promises and representations made to her by the defendant were false and fraudulent; that the policy was made payable to the executor or administrator of the insured, such provision being printed in type hard to read and uncommon to the unlearned, a class of people with which the defendant largely deals in the sale of industrial policies; that the policy also contained a "trick clause," whereby it was provided that "the company may make any payment or grant any non-forfeiture privilege provided herein to the insured, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equita-

bly entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial"; that by this "trick clause," printed in peculiar type, which contradicted the clause just preceding it providing for payment to the "executor or administrator of the insured," the plaintiff was misled, defrauded, and cheated out of the weekly premiums on said policy; that this clause was used to persuade the plaintiff, a woman of very little education and of no business training or experience, that she was in truth the sole beneficiary under the policy, and that she was thereby induced to pay the premiums on the policy during the lifetime of the insured, when as a matter of fact the plaintiff's name does not appear as beneficiary and the defendant knew that she was not the beneficiary, though it fraudulently represented to her that she was; and that also the defendant, through its agent, practiced a fraud upon her in order to get possession, after the death of the insured, of the policy and the receipt book held by her, which evidenced the fact that she had paid all the premiums on the policy. She asked judgment for $540.00 actual and $2,400.00 punitive damages.

Defendant demurred to the complaint, and at the same time moved for an order requiring the plaintiff to make it more definite and certain by separately stating the various causes of action which were jumbled together as one cause. The demurrer and the motion were overruled. On appeal this Court, in sustaining the action of the Court below, construed the complaint as follows: "The complaint contains a single cause of action, for damages on account of the alleged fraud of the company in delivering to the plaintiff a policy upon the life of one Nettie Archer, payable in the event of her death to her personal representatives, when it had been agreed that in consideration of the payment of the premiums by the plaintiff herein, Hannah Crosby, she should have been named as beneficiary of the proceeds of the insurance." *Crosby v. Ins. Co.*, 161 S. C., 519, 159 S. E., 926, 927.

Defendant then answered, admitting the issuance of the policy to one Nettie Archie, but denying all allegations of fraud. In addition, it pleaded fraud on the part of the plaintiff in having another woman impersonate Nettie as applicant for the insurance.

On trial, defendant's motion for a directed verdict, made on several grounds, was refused, and the case was submitted to the jury, who found for the plaintiff the entire amounts of actual and punitive damages sued for, stated separately. A new trial was granted by his Honor, Judge Grimball, unless the plaintiff remitted on the record $1,200.00 of the verdict for punitive damages. This she did, and from judgment so entered this appeal is taken.

We will not discuss the exceptions *seriatim,* but in our consideration of the appeal will dispose of all the questions presented or involved.

Defendant's motion for a directed verdict was based upon two grounds: (1) That the plaintiff was estopped by her negligence in the insurance transaction from alleging fraud on the part of the defendant and from recovering damages for same; and (2) estoppel based upon the statute law of the State (Section 7994, Code 1932), which provides that no insurance company shall "make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon."

As to the first ground, the contention is that the plaintiff was guilty of gross negligence in not reading either the application or the policy, relying instead upon the oral statement of the agent that she was the beneficiary; and that she is estopped by reason of such negligence from claiming damages for the alleged fraud on the part of the defendant.

The testimony tends to show that the plaintiff, a colored woman, had been a policyholder in the defendant company for about five years, and had been carrying also as beneficiary, by payment of the premiums, one or more policies, including one on the life of her mother; that each week a

collector or agent of the company would call at her home for the purpose of collecting the weekly premiums; and that, at the time of the issuance of the policy here in question, and for some time prior thereto, the agent was a man named Murphy, who called at her home every Monday to collect. She testified that in January, 1930, her cousin, one Nettie Archie, was visiting her in Chester, and that, when Murphy came on Monday, the latter part of that month, he asked the plaintiff who Nettie was, and, on being told, suggested that he write some insurance on her life and make the plaintiff, if she would pay the premiums, the beneficiary, and that this was agreed to by every one; that, after asking Nettie a number of questions, he had her to sign a paper, and then remarked that "the beneficiary goes to Hannah Crosby"; that about two weeks afterwards he delivered the policy to the plaintiff and told her that she was the beneficiary; that she thereupon asked him to show her that provision, and he pointed out to her a place in the policy, but she could not read anything; that she told him the printing he was pointing out looked funny, and that she could not read or understand it, and that he replied it meant she was the beneficiary; that, relying upon the statements, promises, and representations made to her by the agent, she paid the premiums upon the policy until the death of Nettie; that, after Nettie's death, another agent of the company came to her home and asked for the policy and the receipt book, and that she gave them to him, expecting the insurance to be paid; and that later, in about a month's time, she asked the agent about the policy, and he told her that she was not the beneficiary and would get nothing.

Murphy testified that he remembered the occasion of the taking of the application for the policy in question at the home of Hannah Crosby; and that he had written other policies for Hannah, but had no recollection one way or the other of having had a conversation with her in regard to her being the beneficiary under this policy; but he admitted

that he told her that, under its provisions, the policy made her the beneficiary.

It is to be kept in mind that the fraudulent breach complained of was not a breach of the contract of insurance made between the company and Nettie Archie, the insured, but a breach of the agreement between the plaintiff and the company that she would be made the beneficiary of the policy to be issued by it on the life of Nettie Archie, upon the condition that she would pay the premiums—to which Nettie agreed. This agreement was oral. Plaintiff's alleged negligence, therefore, was her failure to read, or to have read to her, the application for the policy or the policy itself, in order to determine whether she had been made the beneficiary as agreed upon; her situation in this respect being analogous to that of a party to a written contract who, not having read it, seeks to escape its provisions.

It has been repeatedly held by this Court that it is the duty of a person to read his contracts, and that, if he cannot read, he should get some one to read them for him. But in the case of *J. B. Colt Company v. Britt,* 129 S. C., 226, 123 S. E., 845, 848, this Court also said: "But as recognized in *Baldwin v. Cable Co.* (78 S. C., 419, 59 S. E., 67), *supra,* it is equally well settled that if the party who signs a written contract in ignorance of its contents without reading it or having it read is induced to sign by conduct of the other party which amounts to actionable fraud, this may give the signer the right to avoid the contract as against him on the ground of fraud. 13 C. J., 371, § 250." See, also, *Continental Jewelry Company v. Kerhulas,* 136 S. C., 496, 134 S. E., 505; *G. M. A. C. v. Whitehead,* 163 S. C., 236, 161 S. E., 494; *Southern Iron & Equipment Company v. Railway Company,* 151 S. C., 506, 149 S. E.; 271.

Under the peculiar facts and circumstances of this case, the questions presented were for the jury, and the Court properly overruled the motion for a directed verdict on this ground.

As to the second ground, defendant's contention is also without merit. As already indicated, plaintiff is not attempting to recover upon the contract of insurance or the policy issued, but bases her action upon the company's alleged fraud in failing to make her the beneficiary in accordance with its agreement. Further, the statute was never intended to shield a fraud.

The defendant also complains of error on the part of the trial Judge in charging the jury "how the respondent could be damaged if they found that she was entitled to recover damages"; in charging on the question whether or not there was a breach of the conditions of the policy terms, and as to the law of waiver; and in refusing to charge appellant's request No. 1, which was a statement of the issues in the case as conceived by the defendant.

The defendant set up in its answer the affirmative defense that the insured, Nettie Archie, was an ill woman in Charlotte, N. C., dying of dropsy, when the application for insurance was supposed to have been signed by her in Chester, S. C., and that the plaintiff, in representing the person who signed the application to be the real Nettie Archie, misled and deceived the defendant into issuing the policy, and that therefore she was estopped by her fraudulent acts to recover any damages whatever. A finding by the jury, under the testimony, that these allegations of the answer were true, would have been a complete defense to plaintiff's action. The defendant, therefore, contends that the Court, in charging the jury as though plaintiff's action were based on the contract of insurance, misled them into believing that the defendant was endeavoring to avoid payment of the policy, when in reality it was endeavoring to defend itself against a charge of fraudulent conduct, and that the Court thereby misled the jury as to the true measure of actual damages to be awarded the plaintiff, if they found that the plaintiff was entitled to any such damages.

While the charge was not as clear on the issues made as it might have been, we think, when it is read as a whole, some of the objections made by appellant are without merit. However, the charge clearly misled the jury as to the measure of actual damages. Under the instructions given, they were led to believe that, if the plaintiff suffered any actual damages, the amount would be the face of the policy, $540.00. They should have been instructed that the amount of the policy was not to be considered as an element of such damages; the true measure being the amount of premiums which plaintiff paid the company on the policy. The testimony shows that she paid the premiums for twenty-six weeks at 45 cents per week, amounting to $11.70. There is no dispute about this; and there is no evidence of any other actual damages. The jury, under the testimony, found, as a matter of fact, that she was entitled to actual damages and awarded her $540.00, but under proper instructions from the Court the award should have been $11.70. We think, therefore, that the appellant should have remitted to it on the judgment the difference between $540.00 and $11.70, which amounts to $528.30.

It is therefore the judgment of this Court that, unless the plaintiff remit upon the record, within ten days after the filing of the remittitur herein with the Clerk of Court for Chester County, the sum of $528.30, judgment be reversed and a new trial granted; but that if she so remit the sum of $528.30, judgment is affirmed for $1,211.70. And it is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.