[Civ. No. 26931.   Second Dist., Div. Four.   Oct. 21, 1963.]

C. E. SYMCOX, Plaintiff and Respondent, v. ALBERT ZUK et al., Defendants and Appellants.

Edwin M. Rosenberg, Guy Richard Crump, Lewis, Singer, Burns & Goldstone, A. A. Goldstone, Trippet, Yoakum & Ballentyne, Oscar A. Trippet and Neil Papiano for Defendants and Appellants.

Nossaman, Thompson, Waters & Moss, Laughlin E. Waters and Rodney C. Hill for Plaintiff and Respondent.

KINGSLEY, J.—The record in this case is voluminous and there is substantial conflict as to many of the facts. However, as is our duty on an appeal, we limit our statement to the facts found by the trial court and sustained by the evidence, and to the version most favorable to respondent.[1]

A company known as "Nips, Inc.," located in New York, originated the concept of bottling and merchandising perfumes in small plastic vials, each containing enough perfume for a single application. Among the organizations for which Nips, Inc., did bottling was a company known as "Tipps, Inc." The latter contracted with defendant Biedes, giving him the exclusive right of representation in connection with the vials, in "all areas of the United States except New York." Biedes thereafter assigned his rights under the agreement with Tipps to a partnership, known as "Famous Brands," which consisted of himself and defendants Zuk.[2] In response to an advertisement published by Famous Brands, plaintiff contacted that partnership with the idea of entering into an exclusive agency agreement for Arizona. Defendants sent one Jarvis to negotiate with plaintiff. Jarvis, with the authority of Biedes, made a series of representations to

[1]None of the briefs contain a succinct or cohesive statement of facts. In addition, all counsel have presented their version of the facts, as applicable to the several issues on appeal, as though we, and not the trial court, had the power to weigh testimony, resolve conflicts in the evidence and draw conclusions therefrom. The statement of facts which follows has been gleaned from the scattered references in the briefs, supplemented by our own reading of a 2,000-page reporter's transcript and 400 pages of clerk's transcript. We have attempted to limit our statement to the facts necessary for an intelligent understanding of the case without burdening this opinion with irrelevant detail.

[2]Mrs. Zuk did not sign the formal partnership agreement; and, at a later date, the Zuks withdrew from the partnership. The trial court found that the conduct of the Zuks was such that, as to plaintiff, they were both to be treated as partners, and as continuing to be such during all of the period herein involved, and that they were responsible for the misrepresentations made to plaintiff by Jarvis and by Biedes directly and through Jarvis. As with other findings in this case, the finding is supported by evidence and is binding on us.

plaintiff, among which were: (a) that Famous Brands had, by its arrangement with Tipps, an exclusive right to sell the Nips vials throughout the west; (b) that the vials contained nationally advertised brands of high quality perfumes, including among others, Chanel No. 5; (c) that Famous Brands was a financially responsible organization, backed by the Zuks, who were wealthy; (d) that Famous Brands had a formal opinion from one of the largest law firms in Los Angeles that the operations of Nips, Tipps, Famous Brands, and plaintiff, were completely legal in all respects. Except as to the existence of the distributorship agreement between Tipps and defendants, and as to the membership in the Famous Brands partnership, these—and many other—representations were false, were known to Biedes to be false, were made with intent to deceive plaintiff, and were believed and relied on by plaintiff.

After consideration of Jarvis' representations, and consultation with his family and his attorney, plaintiff signed a distributor franchise agreement and placed an order slightly in excess of $4,000 for Nips. This agreement contained a guaranty clause which provided that ''Company [Famous Brands] guarantees to Distributor complete return of Distributor's cash investment in Purchase Order attached to this agreement. At Distributor's option, any merchandise contained in said order, and/or MERCHANDISERS for the unearned cash value of leases, after having been on display at dealer locations for a period of six months, may be returned in good resaleable condition for full cash refund for and in the amount of the complete unreturned portion of Distributor's cash investment.''

Subsequently, plaintiff came to Los Angeles to visit with defendant Biedes. During this visit plaintiff entered into a second separate and distinct agreement whereby he advanced Famous Brands the sum of $1,000 as a deposit to hold an option for rights as exclusive sales agent and distributor for the territory of Las Vegas, Nevada. This written agreement provided that, should plaintiff decide not to acquire that territory within 90 days from the date of agreement, his $1,000 deposit would be refunded in full within 30 days after a written request was given to Famous Brands.

Between January 1958 and September 1958, plaintiff opened 97 dealer accounts for the marketing of the perfume Nips throughout the State of Arizona. In September 1958, plaintiff notified Biedes that he wished to disassociate himself

from Famous Brands and asked for a return of the money advanced for the purchase of Nips pursuant to the guaranty clause of the distributor franchise agreement. This offer was refused by Biedes.

In addition to the fact that, contrary to defendants' representation, Tipps (and therefore Famous Brands and plaintiff) had no exclusive arrangement with Nips, the entire series of agreements was subject to a fatal legal obstacle. The value of the distributorships, as Jarvis had emphasized in his first interview with plaintiff, lay in the use of the vials to sell well known brands of perfume. But these perfumes could not be thus bottled and sold without the consent of the trademark proprietor; and such consents had not been obtained. These facts became apparent when, in December 1958, defendants consented to the entry of a decree against them in an action brought by Chanel, Inc., for unfair competition.

Biedes argues that the only representation with regard to legality was a reference to the decision of the United States Supreme Court in *Prestonettes, Inc.* v. *Coty*, 264 U. S. 359 [44 S.Ct. 350, 68 L.Ed. 731], and that this amounted, at the most, to an erroneous but good faith construction of that opinion. But this ignores the representation, which the trial court found was false and relied on, that the entire operation had been found to be legal in an opinion from a large law firm.

On January 29, 1960, plaintiff filed the present action against defendants Albert Zuk, Gladys Zuk, and Frank R. Biedes, individually and doing business as Famous Brands, a copartnership, together with Robert S. Jarvis.[3] The complaint alleged the plaintiff had been fraudulently induced to enter into an exclusive distributor franchise agreement for vials of perfume known as "Nips" and sought out-of-pocket losses in the sum of $9,634.35 and punitive damages in the sum of $10,000. The second cause of action sought damages of $2,694.05 for breach of the guaranty clause in the distributor franchise agreement. The third cause of action sought damages in the amount of $5,000 for breach of other portions of the distributor franchise agreement. The fourth cause of action sought recovery of the $1,000 paid for the option for exclusive distributor rights for Las Vegas, Nevada. The sixth

[3]It developed, during the progress of the case, that Jarvis had been an innocent transmitter of Biedes' misrepresentations. The action against him was dismissed and judgment entered in his favor.

cause of action was a common count for money had and received in the sum of $7,200. The fifth cause of action is not pertinent to this appeal.

After the filing of the complaint, plaintiff filed an affidavit for attachment in the sum of $2,694.05 "upon an express contract for the direct payment of money," and filed his undertaking on attachment. The writ of attachment was thereupon issued and the plaintiff made some 28 levies under the writ of attachment upon the real and personal property of defendants Zuk. Later, by stipulation, the attachments were released upon the deposit of $4,300 by defendants Zuk as security for any judgment obtained by plaintiff.

After a lengthy trial, the trial court entered judgment for plaintiff in the amount of $9,918.47 as compensatory damages for fraud and deceit, $7,500 punitive damages, $2,647.18 for breach of the distributor franchise agreement with interest from September 19, 1958, and $1,000 for breach of the option agreement with interest from March 24, 1958. The total judgment was for $21,065.65.

Defendants and each of them appeal from the judgment alleging numerous points of reversible error which will be discussed hereinafter. However, there is no issue involved herein as to the liability of Biedes for $1,000 under the fourth cause of action.

I

Plaintiff in his complaint alleged that "The rebottling, distribution and sale of perfumes by defendants in the manner employed by them without the approval or consent of the perfume manufacturer was not lawful or proper under the laws of the State of California, the State of Arizona, or the United States. . . ." In the findings of fact and conclusions of law, the court determined that ". . . the business and practice of the Partnership of bottling, distributing and selling perfumes known as 'Nips' without the consent of the perfume manufacturers was not lawful under the laws of California, Arizona and the United States; defendants Biedes, Albert Zuk and Gladys Zuk and the Partnership knew and should have known that these representations were false and untrue at the time they were made."

Defendants contend that the face of the record shows the distributor franchise agreement to be an illegal contract, and that plaintiff is not entitled to recovery for defendants' breach of an illegal agreement. However, even assuming that the illegality of the distributor agreement was patent (and

we point out later that it was not), plaintiff is not barred from recovery for defendants' breach of the guaranty provision of the agreement.

Where the consideration is only partially illegal and the agreement is severable, the legal portion may be enforced. (See Rest., Contracts, §§ 606, 607.) ▬ And if the contract has several distinct objects, of which at least one is lawful, the contract is valid and enforceable as to the lawful object, provided that this is clearly severable from the rest. (Civ. Code, § 1599; *Werner* v. *Knoll* (1948) 89 Cal.App.2d 474 [201 P.2d 45].)

▬ There was nothing illegal about the guaranty clause. It simply provides that if plaintiff could not sell the perfume Nips after they had been on display for at least six months, he had the option of returning the merchandise, and getting his money back. Furthermore, by enforcing the guaranty clause of the contract, the court is aiding the object of the injunction entered against the defendants in that it removes these perfumes from the arena of the market place.

▬ Defendants make the further argument that, since a cause of action for fraud inducing a party to enter into a contract, affirms the contract (*Bancroft* v. *Woodward* (1920) 183 Cal. 99 [190 P. 445]; *DeCampos* v. *State Comp. Ins. Fund* (1954) 122 Cal.App.2d 519 [265 P.2d 617]) and since the distributor franchise agreement is illegal, the cause of action for fraud is barred by the illegality of such contract. We do not agree. In *Grant* v. *Weatherholt* (1954) 123 Cal. App.2d 34 [266 P.2d 185], one of the defendants represented that title to certain property owned by defendants was unencumbered, and thereby induced plaintiff to advance $25,000 to be used to pay for improvements to be made on the property. Thereafter, plaintiff contracted to perform the construction work on said project on a cost-plus basis. Plaintiff commenced work and then learned of the falsity of the representation. He sued for damages occasioned by the fraudulent representation and for damages for breach of contract resulting from defendants' failure to finance the completion of the improvements and their failure to sell a sufficient quantum of property to pay plaintiff pursuant to the improvement contract. The court held that plaintiff's cause of action for breach of the contract was barred because he was not a licensed contractor. But plaintiff was permitted to recover on his fraud cause of action. The court at page 43 states:

"Plaintiff's cause of action for fraud is not 'for the collec-

tion of compensation for the performance of any act or contract for which a license is required.' Plaintiff's right is the outgrowth of the deceit practiced upon him by the defendants. The validity or invalidity of his contract does not affect that right. Proof of the contract under the cause of action for fraud was merely proof of the circumstances under which plaintiff's services were rendered and his money was expended.''

Even though the distributor franchise agreement may have been illegal, still it would not have barred plaintiff's cause of action for fraud in inducing plaintiff to enter such contract.

█ Furthermore, the agreement with plaintiff was not illegal on its face. The illegality arose from the failure of defendants or their assignors to obtain consent from the manufacturers of the perfumes which they intended to sell for the use of the manufacturers' trade names. Had such consents been obtained, the agreement with plaintiff would have been valid. But defendants represented that all necessary prerequisites to validity had been performed and that counsel had so advised them. It does not lie in the mouth of one who affirmatively represents that he has power to enter into an agreement to set up his own lies as a defense to an action based on that very deception.

## II

█ Defendants further contend that the guaranty clause had not been breached, since (a) plaintiff had not displayed at a "dealer location" all of the unsold Nips for a full six-month period; and (b) that the unsold Nips have not been returned to defendants. As to the first contention, it is clear that a large part of the Nips had been displayed by dealers for over six months. The parties litigated the question of interpretation of the clause; the trial court adopted plaintiff's contention that he was not required to display each and every vial for six months, but only was required to display a reasonable quantity for that period; this interpretation, not being unreasonable, is as binding on us as are the other findings of the trial court.

█ It is not denied that adequate offers to return the unsold Nips were made and are still in force, but that defendants have neither indicated a place for delivery nor tendered the monies due from them. Under such circumstances, the tender of return is all that the all requires. (Civ. Code, § 1496; Code Civ. Proc., § 2074; see *Sierra Land & Cattle Co.* v. *Bricker* (1906) 3 Cal.App. 190 [85 P. 665].)

## III

■ Defendants further contend that plaintiff, by levying writs of attachment, elected his remedy to pursue the contract causes of action and thus waived the tort cause of action for fraud. Therefore, they contend, the trial court was without jurisdiction to award plaintiff compensatory and punitive damages based on the fraud cause of action. In support of their position of election of remedies defendants cite the following authorities: *Estrada* v. *Alvarez* (1952) 38 Cal.2d 386 [240 P.2d 278]; *Steiner* v. *Rowley* (1950) 35 Cal. 2d 713 [221 P.2d 9]; *Barret* v. *Hammer Builders, Inc.* (1961) 195 Cal.App.2d 305 [16 Cal.Rptr. 49]; and *Eistrat* v. *Bush Industrial Lumber Co.* (1954) 124 Cal.App.2d 42 [268 P.2d 181]. However, these cases are distinguishable from the case here presented since in each only one cause of action was present, pleaded in different ways under two or more theories. That is to say, only one primary right was violated and the various counts or causes of action were all directed at the vindication of that right.

In the present case plaintiff's first cause of action was for fraud, in that defendant by false and fraudulent representations induced plaintiff to enter into the distribution franchise agreement, thus incurring out-of-pocket expenses in the amount of $9,918.47. Plaintiff's second cause of action was for breach of the guaranty clause of the distribution franchise agreement. Plaintiff's third cause of action was for breach of this same agreement in that defendants did not furnish plaintiff with the type of merchandise described in the contract. The fourth cause of action was for breach of the refund clause of an option agreement that was wholly distinct and apart from the distributor franchise agreement pertaining to the territory of Arizona.

It will be noticed that the operative facts giving rise to each cause of action are different, and in each instance a different primary right had been violated. Therefore, plaintiff's use of the provisional remedy of attachment as to one of the independent causes of action in no way amounted to an election Appellants could not have forced plaintiff to an election of remedies because he had independent, therefore consistent, causes of action and was entitled to pursue all of them until satisfaction was had. (*Bohn* v. *Watson* (1954) 130 Cal.App.2d 24, 36 [278 P.2d 454].)

## IV

■ Except as to the points hereinabove discussed, the

briefs present only arguments as to whether the several false representations were made with knowledge of their falsity, or were made at all, whether they were justifiably relied on by plaintiff, and especially whether plaintiff's knowledge as to the falsity of some representations prevented him from relying on other representations, and as to the liability of the Zuks for representations made by Jarvis and by Biedes, and as to the liability of the Zuks for events occurring after their attempted withdrawal from the partnership. These arguments involve the weighing of testimony and drawing of inferences — matters which are for the trial court and not for us.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied November 7, 1963, and appellants' petition for a hearing by the Supreme Court was denied December 18, 1963.