0319

Wallace O. CARRIGG, Sr., Respondent, v. P. D. BLUE and Gulf Oil Corporation, Appellants.

(323 S. E. (2d) 787)

Court of Appeals

*John P. Linton, Sinkler, Gibbs & Simons,* Charleston, and *Keith E. Parks,* Houston, Tex., *for appellants.*

*S. Jahue Moore,* West Columbia, and *Morris D. Rosen,* and *Richard S. Rosen, Rosen, Oberman & Rosen,* Charleston, *for respondent.*

Heard June 19, 1984.

Decided Nov. 16, 1984.

BELL, Judge:

Wallace Carrigg brought this action for fraud against Gulf Oil Corporation and Paul Blue, a Gulf retail marketer responsible for dealer operated station franchises in Charleston, South Carolina. Carrigg alleged Blue made fraudulent representations and fraudulently concealed material information for the purpose of inducing Carrigg to enter into a one year service station lease and franchise agreement with Gulf. The trial resulted in a verdict in favor of Carrigg for $250,000 actual damages and $1,500,000 punitive damages against both defendants. The circuit judge granted a defense motion for a new trial nisi, requiring Carrigg to remit $150,000 of the actual damages and $250,000 of the punitive damages. Carrigg agreed to the remission and judgment was entered in his favor for $1,350,000. Gulf and Blue appeal. As we find no evidence to support the damages awarded, we reverse and remand for a new trial.

Carrigg grounds his suit on certain conversations held with Blue in April and May of 1979 regarding the lease of a Gulf owned service station in North Charleston. As a result of these conversations, Carrigg entered a written lease of the premises and signed a standard form trial franchise agreement with Gulf. Under the franchise agreement Gulf agreed to supply and Carrigg to purchase petroleum products for retail sale at the station. Both contracts were for a term of one year. Carrigg alleges Blue orally guaranteed Gulf would re-

new the lease, at Carrigg's option, for two or three years beyond the initial term.

At the time Carrigg leased the station, Gulf considered it a candidate for "divestiture." Divestiture meant permanently closing the station and selling it. Evidence adduced at trial revealed Gulf's finance department in Atlanta, Georgia, had recommended the station for divestiture prior to the time Carrigg executed the lease. This information was not disclosed to Carrigg. Less than a month after the lease was signed, Blue also recommended divestiture of Carrigg's station. In February, 1980, Gulf formally advised Carrigg it did not intend to renew the lease. At the end of the term Carrigg vacated the premises.

Carrigg claims Gulf's conduct constituted actionable fraud at common law. When the evidence and the inferences to be drawn from it are considered in the light most favorable to Carrigg, there are sufficient facts from which a jury could find in Carrigg's favor on the question of liability. However, the proof of damages was not adequate to support either the jury's verdict of $250,000 or the circuit judge's award of $100,000 in actual damages.

Since the jury found he was induced to enter a contract by fraud, Carrigg had the election of disaffirming the contract and recovering the consideration he paid Gulf plus any incidental damages which were foreseeable and were incurred in reliance on the fraudulent misrepresentation. *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, 279 S. C. 468, 309 S. E. (2d) 763 (S. C. App. 1983). Carrigg elected to be returned to the status quo ante. In the words of his attorney, he wanted to be "put … back into the position he would have been in, if all this hadn't happened."

In his complaint, Carrigg pleaded the following elements of actual damage: expenditure of money to purchase equipment and inventory for the station; expenditure of money to rent and maintain the station; expenditure of money to run the station; expenditure of time and effort to start and build the business; expenses incurred in mortgaging his home to raise money to invest in the station.[1]

---

[1] Carrigg also alleged he suffered great emotional shock, inconvenience, and embarrassment. Since these are not proper elements of damage in an action for fraud, we do not consider them. *Ellis v. Crockett*, 51 Hawaii 86, 451 P. (2d) 814 (1969).

■ Carrigg's evidence established the following reliance damages. He spent $8900 to purchase equipment and inventory from Gulf. These purchases were required in order to obtain the lease. In addition he paid $300 a month rent in June, July, August, and September and $600 a month rent in October, November, December, and January, for a total of $3600 in rent paid. Thus, the consideration paid to Gulf for the lease totalled $12,500. In addition, Carrigg testified he invested $3000 of the mortgage proceeds in running the station. He also spent $700 on equipment purchased from another dealer and $500 on hand tools. The inventory on hand when Carrigg ceased operations in January was valued at $3679. It is not clear from the record whether the additional equipment, tools, and inventory were purchased from the $3000 mortgage proceeds nor is it clear whether the inventory on hand in January replaced or was in addition to the original inventory Carrigg purchased with the station lease. Assuming no double counting is involved in adding these expenditures together, Carrigg incurred incidental expenditures totalling $7879 in reliance on Gulf's representations. Therefore, his total out of pocket expenditures were $20,379.

Carrigg testified he and his wife operated the station until January without taking a salary. He estimated they worked sixteen hours a day during the initial period of operation. However, Carrigg admits he hurt his back in September and did not work full time at the station after that. No evidence was introduced as to the total number of hours Carrigg and his wife worked at the station nor was there proof of the fair market value of their time. Thus, the evidence was not adequate to permit the jury to determine the monetary value of this element of the pleaded damages. We think it clear, however, that on any reasonable basis of reckoning, the time and effort expended would be worth far less than $79,600, the difference between the $100,000 actual damages found by the judge and Carrigg's total out of pocket expenditures. Moreover, Carrigg's reliance damages would have to be reduced by the amount of money he earned from operating the station. *See C. C. Hauff Hardware, Inc. v. Long Manufacturing Co.,* 260 Iowa 30, 148 N. W. (2d) 425 (1967). The record indicates his net earnings from the first seven months of operation were $4700.

In short, there is no basis in the evidence for finding Carrigg's actual damages were $100,000. Significantly, his own counsel, in closing argument to the jury, stated:

> Now, Mr. Moore [one of Carrigg's attorneys], Mr. Linton [one of Gulf's attorneys], and I have all discussed actual damages; and I think everybody has about agreed that it's somewhere in the neighborhood of $20,000; or if you want to give them [the Carriggs] something else, that's about what they get.

Though the jury was not bound by counsel's estimate of damages, the statement does show how radically they departed from the evidence in assessing actual damages at $250,000.

Carrigg's counsel argued on appeal that $100,000 in actual damages can be supported as an attempt to award Carrigg the profits or value of a going business he would have realized if Gulf had not defrauded him. This position is untenable for two reasons.

First, Carrigg elected to be returned to the status quo ante rather than to recover the benefits he would have received under the three year contract he was guaranteed. While he was entitled to a remedy on one theory or the other, he could not reap a double recovery on both theories. *See Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc., supra.*

Second, Carrigg presented no evidence from which the jury could accurately determine the value of his lost business opportunity or loss profits. In the absence of such evidence, the judge quite properly did not charge the jury as to the measure of damages for loss of a going business. Since the issue was never presented to the jury, it cannot be the basis for sustaining their verdict. *Carter v. Atlantic Coast Line R. Co.*, 194 S. C. 494, 10 S. E. (2d) 17 (1940).

The judge correctly instructed the jury that the purpose of actual damages is to place the injured party as near as possible in the same position he was in before the fraud occurred. He further charged them that recovery is restricted to such damages as were the natural and proximate consequence of the fraud and such as can be clearly defined and ascertained, including those which were actually or pre-

sumptively within the contemplation of the parties when the fraud was committed.

The verdict of $250,000 conclusively shows the jury disregarded the court's instructions or else capriciously fixed damages without reference to the evidence. Where there is no evidence on which the jury could have based their finding of actual damages, it is error for the court to refuse a motion for new trial. *Whetsell v. Sovereign Camp, W.O.W.*, 188 S. C. 106, 198 S. E. 153 (1938). We hold the court committed an abuse of discretion amounting to an error of law when it refused the defense motion for a new trial on the ground that the verdict was arbitrary, capricious, and so grossly excessive as to indicate passion, prejudice, or other improper motive. Since the verdict for actual damages cannot stand, the verdict for punitive damages also falls. *O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 279 S. C. 490, 309 S. E. (2d) 776 (S. C. App. 1983).

Where there are distinct jury issues, the issue as to which a new trial is required is separate from all other issues, and the error requiring new trial does not affect the determination of any other issue, the scope of new trial may be limited to the single issue as to which reversible error was committed. *Industrial Welding Supplies, Inc. v. Atlas Vending Co.*, 276 S. C. 196, 277 S. E. (2d) 885 (1981). In this case, however, the questions of liability and damages are inextricably intertwined. Carrigg seeks incidental reliance damages and punitive damages from Gulf. The measurement of these damages necessarily depends on the jury's view of the facts giving rise to liability. It requires the jury to assess the quality of the acts creating liability, the degree to which those acts are culpable, and the nature and extent of Carrigg's reliance on them. Common questions of fact underlie both the liability and the damages aspects of the case. In fairness to all parties, we believe these issues should be tried together before the same fact finder. For these reasons, we reverse and remand for a new trial on all issues.

Our disposition renders it unnecessary to address the remaining exceptions raised by Gulf.

Reversed and remanded.

SHAW and CURETON, JJ., concur.