**DEFENDER INDUSTRIES, INC., Plaintiff,**

v.

**The NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 3:88–3231–16.**

United States District Court, D. South Carolina, Columbia Division.

Dec. 15, 1989.

---

**254**

Thomas English McCutchen, John Calvin Bradley, Jr., Columbia, S.C., for plaintiff.

David Clay Robinson, Columbia, S.C., for defendant.

ORDER

HENDERSON, District Judge.

This matter is before the Court on the post-trial motions of the defendant, The Northwestern Mutual Life Insurance Company ("Northwestern"), and the plaintiff, Defender Industries, Inc. ("Defender"). Northwestern moves for judgment notwithstanding the verdict, for a new trial or for a remittitur. Fed.R.Civ.P. 50(b). Defender moves the Court to amend the judgment to add prejudgment interest. For the reasons set forth below, the Court sets aside the punitive damages award and modifies it, grants the plaintiff's motion for prejudgment interest on the actual damages award and denies the remaining motions.

On motion for judgment n.o.v., the Court must consider the record as a whole and in the light most favorable to the party opposing the motion and, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party, the motion should be denied. *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 891 (4th Cir.1980).

## I.

Viewed in the light most favorable to the plaintiff, the facts are as follows. In 1985, Defender was in the process of evaluating various life insurance policies it had on its key employees and executives. Agents of Northwestern met with officers of Defender in hopes of selling Defender new policies to replace some that were then in effect. The Northwestern agents procured applications for new policies from Defender. The Defender employees and executives who were potential insureds then submitted to physical examinations. The Northwestern agents sold Defender several policies and were eager to provide a policy on the life of Kathryn C. Inabinet, Defender's chairman of the board, in the amount of Eight Million ($8,000,000) Dollars. Defender was uncertain at the time, however, as to the amount of coverage it needed for Inabinet; estate taxes in the event of her death were

projected to range from Five Million ($5,000,000) to Eight Million ($8,000,000) Dollars. Because Defender already had in effect with another company a life insurance policy covering Inabinet in the amount of Five Million ($5,000,000) Dollars, Defender's officers felt it best to delay purchasing a replacement policy until they had a better idea of the amount of coverage needed. In order to close the deal, one of Northwestern's agents promised Defender's officers that, if Defender then purchased a policy for Eight Million ($8,000,000) Dollars, Inabinet's maximum insurability, it could later reduce the amount of coverage and receive a rebate for the difference in premiums. Defender agreed to this term and purchased the policy.[1] Several months later Defender asked Northwestern to reduce the amount of coverage to Seven Million ($7,000,000) Dollars and to credit Defender with the difference in premiums paid from the date the policy was purchased. Northwestern agreed to reduce the amount of coverage but refused to rebate the difference in premiums. Defender then requested rescission of the contract; Northwestern refused. Defender let the policy lapse and brought this action claiming breach of contract, breach of contract accompanied by a fraudulent act, fraud, constructive fraud, outrage and negligence.

At trial, Northwestern was granted leave to amend its answer to assert as an affirmative defense that the alleged promise to rebate the premium, if made, would be unenforceable as a violation of S.C.Code Ann. § 38–55–50 (1976, as amended).[2] At the close of all of the evidence, Defender withdrew its outrage claim. The Court granted Northwestern's directed verdict motions on the negligence, breach of contract and breach of contract accompanied by a fraudulent act claims. The Court concluded, however, that section 38–55–50 ("the statute") was not designed to shield a fraud and that Defender's fraud and constructive fraud claims survived.

The jury returned a verdict for Defender on both the fraud and the constructive fraud claims in the amount of One Hundred Six Thousand, Five Hundred Thirteen and 74/100 ($106,513.74) Dollars in actual damages and Five Million ($5,000,000) Dollars in punitive damages.

## II.

■ Northwestern first contends that it is entitled to judgment n.o.v. on the ground that as a matter of law Defender had no right to rely on the promise to rebate the premium. One of the nine elements of a fraud action is the hearer's right to rely on the truth of the alleged misrepresentation. *See Mylin v. Allen–White Pontiac, Inc.,* 281 S.C. 174, 314 S.E.2d 354 (Ct.App.1984). Northwestern contends that because the statute prohibits an insurance agent from paying, allowing or giving, or offering to pay, allow or give, a rebate of premium, no one to whom such an offer is made has a right to rely on such a promise.

■ Because this action arises under the Court's diversity jurisdiction, South Carolina law applies. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Although the statute has been construed several times, there appears to be no controlling South Carolina precedent as to whether the statute would

---

1. The evidence indicates that Northwestern did not deliver a written policy to Defender until after Defender requested a reduction in coverage and rebate. The policy did not include a rebate term.

2. Section 38–55–50 provides in pertinent part: "An insurer, its agent, or an insurance broker doing business in this State may not make or permit any discrimination in favor of individuals between insureds of the same class and risk involving the same hazards in the amount of the payment of premiums or rates charged for policies of insurance ... in the dividends or other benefits payable, or in any other of the terms and conditions of the contracts it makes.... An insurer or its officer, agent, solicitor, or representative or an insurance broker may not pay, allow, or give or offer to pay, allow, or give, directly or indirectly, as inducement to the taking of insurance any rebate of premium payable on the policy, any special favor or advantage in the dividends or other benefits to accrue from the policy, ... or any valuable consideration or inducement not specified in the policy contract of insurance...."

as a matter of law preclude a plaintiff's right to rely on a promise to rebate a premium. This Court's duty as to a question of substantive law the South Carolina courts have not yet ruled on is to foretell the South Carolina Supreme Court's decision if presented with the same question. *Patel by Patel v. McIntyre*, 667 F.Supp. 1131 (D.S.C.1987), *aff'd* 848 F.2d 185.

■ This Court concludes that South Carolina would hold that the statute does not as a matter of law preclude a plaintiff's right to rely on an insurance company's promise to rebate a premium. First, the statute does not expressly prohibit a promisee's bringing legal action on such a promise. More important, the South Carolina Supreme Court has held that the predecessor statute to section 38–55–50, which contained virtually the same language, was not intended to shield a fraud. In *Crosby v. Metropolitan Life Insurance Co.*, 167 S.C. 255, 166 S.E. 266 (1932), the plaintiff, who purchased a policy on her cousin's life, brought a fraud action against the insurer when it refused to pay her the policy proceeds on the cousin's death. The agent had told her she was the beneficiary but the written policy named the insured's estate as beneficiary. As a defense to the fraud claim, the insurance company asserted that an oral side agreement to a written policy violated the statute prohibiting the making of "any contract of insurance or agreement as to such contract other than as plainly expressed in the policy." The State Supreme Court allowed the plaintiff to recover because the action was not on the contract but in tort for fraud and deceit, declaring "the statute was never intended to shield a fraud." 166 S.E.2d 268. In *Hood v. Life & Casualty Ins. Co.*, 173 S.C. 139, 175 S.E. 76 (1934), the court in *dicta* followed *Crosby*. *See also Aiken Petroleum Co. v. National Petroleum Underwriters, etc.*, 207 S.C. 236, 36 S.E.2d 380 (1945).

■ There are exceptions to the general rule that courts will not aid a party to an unenforceable contract. The Restatement of Contracts, which South Carolina has adopted in other particulars,[3] recognizes the right of an injured party to recover in some circumstances despite legislation which makes a contract unenforceable. A breach of contract claim can be maintained for a contract declared unenforceable by statute where the promisee is excusably ignorant of legislation of a minor character.[4] Similarly, restitution is available in favor of a party who is excusably ignorant of such legislation or is not equally in the wrong.[5] The anti-rebate statute constitutes legislation of a specialized or technical nature with which those in the insurance business would be expected to be familiar while lay people normally would not. The evidence in this action indicates the

3. *Player v. Chandler*, 299 S.C. 101, 382 S.E.2d 891 (1989) (statute of frauds); *Moody v. McLellan*, 295 S.C. 157, 367 S.E.2d 449 (App.1988) (construction of contracts); *Ellis v. Smith Grading and Paving, Inc.*, 294 S.C. 470, 366 S.E.2d 12 (App.1988) (restitution); *Riedman Corp. v. Jarosh*, 289 S.C. 191, 345 S.E.2d 732 (App.1986) (covenant not to compete); *King v. Oxford*, 282 S.C. 307, 318 S.E.2d 125 (App.1984) (requirement of certainty in contracts); *Pingley v. Brunson*, 272 S.C. 421, 252 S.E.2d 560 (1979) (specific performance).

4. Restatement (Second) of Contracts (1979), § 180:
    *Effect of Excusable Ignorance.*
    If a promisee is excusably ignorant of facts or of legislation of a minor character, of which the promisor is not excusably ignorant and in the absence of which the promise would be enforceable, the promisee has a claim for damages for its breach but cannot recover damages for anything that he has done after he learns of the facts or legislation.

Comment a explains:
    "... Such ignorance is more likely to be excusable where the legislation is of a local, specialized or technical nature and where the other party may be assumed to have knowledge as to such matters. In determining whether ignorance of fact or law is excusable, any misrepresentations made by the other party are relevant...."
Comment b adds:
    "... If the promisor has specialized knowledge of the field involved, he is likely to be charged with knowledge as to legislation of even a minor character. It is not necessary that the promisor make any misrepresentation, although a misrepresentation by him may be significant as bearing on whether the promisee's ignorance is excusable...."

5. Restatement (Second) of Contracts (1979), § 198.

insurance agents were aware that their promise was unenforceable and that Defender's officers did not know of the statute. This seems to be a case, then, where the Court should not apply a rigid rule forbidding relief.

Northwestern relies on two Oregon decisions involving an almost identical statute.[6] Those cases advocate that a rigid rule precluding reliance on a promise forbidden by statute encourages compliance with the law. "When purchasers of insurance are aware that if they have entered into insurance contracts in violation of the statutes, the courts of Oregon will refuse to come to their aid if the insurer asserts a defense of illegality, we believe that they will avoid this sort of contract in the future." *Mountain Fir Lumber Co., Inc. v. Employee Benefits Ins. Co.*, 679 P.2d 296, 300 (1984). With respect, the Court rejects the Oregon courts' conclusion, which appears to be one that only that jurisdiction has reached, as a fond hope. It is unrealistic to expect that the public will eventually learn that the statute exists. The statute, or predecessor legislation that was very similar, has been a part of South Carolina statutory law for almost a century yet it is doubtful that many people outside the insurance industry are aware of its provisions.

South Carolina courts would more likely conclude that mere constructive knowledge of a statute would not as a matter of law

preclude reliance on a fraudulent representation. In *Reid v. Harbison Dev. Corp.*, 285 S.C. 557, 330 S.E.2d 532 (App.1985), a decision involving a developer's fraudulent nondisclosure of a restrictive covenant, the court declared "[t]he person committing the fraud cannot defeat a claim for misrepresentation simply because the person defrauded is charged with notice under a recording statute [citations omitted], particularly where the misrepresented facts are peculiarly within the representor's knowledge." *Id.*, 330 S.E.2d at 534. The case supports the conclusion that, for the purpose of determining a right to rely on a fraudulent assertion, the issue of constructive notice should not be decided as a matter of law but instead depends on the facts. "Because the jury inferentially found that the Reids acted reasonably, the law does not charge them with constructive notice in this instance." *Id.*, 330 S.E.2d at 535. Several South Carolina decisions indicate that the "right to rely" element of a fraud claim is to be determined by the trier of facts based on the circumstances of each case.[7]

There is additional authority for allowing recovery on a fraud claim in these circumstances. Courts in other jurisdictions have held that a defendant in a fraud action cannot assert as a defense that the transaction induced by the fraud was illegal or against public policy.[8] Other jurisdictions

---

**6.** *Stuckart Lumber Co. v. Employee Benefit Ins. Co., Inc.*, 555 F.Supp. 22 (D.Ore.1982), involved an insurer's illegal and unenforceable promise to return insurance premiums paid in excess of an agreed formula. The court held that there is no right to rely on an illegal promise, declaring that such a rigid rule encourages compliance with the law. In *Mountain Fir Lumber Co. v. Employee Benefits Ins. Co.*, 296 Or. 639, 679 P.2d 296 (1984), after holding an oral premium rebate agreement unenforceable because it was not set forth in the written workers' compensation policy as required by statute, the court further concluded that the insured could not maintain its fraud action because it had no right to rely on a promise forbidden by statute. The holding is partially based on the court's determination that the Oregon legislature intended to prohibit competitive rates for unemployment insurance.

**7.** "Issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reason-

ableness, are preeminently factual issues for the triers of the facts." *Starkey v. Bell,* 281 S.C. 308, 315 S.E.2d 153, 156 (App.1984), citing *Miller v. Premier Corp.,* 608 F.2d 973 (4th Cir.1979) (applying South Carolina law). The right to rely depends on "the various circumstances involved, such as the form and materiality of the representations, the respective intelligence, experience, age, and mental and physical condition of the parties, and the relation and respective knowledge and means of knowledge of the parties." *Giles v. Lanford & Gibson, Inc.,* 285 S.C. 285, 328 S.E.2d 916, 918 (App.1985); *Thomas v. American Workmen,* 197 S.C. 178, 182, 14 S.E.2d 886, 888 (1941).

**8.** *Bassett v. Bassett,* 590 S.W.2d 531 (Tex.Civ. App. 1 Dist.1979) (in action to cancel a deed for fraud, former wife could not defend on ground that transaction induced by her fraudulent promise was illegal or against public policy); *Gaines v. Wolcott,* 119 Ga.App. 313, 167 S.E.2d 366 (1969) (although patient and doctor were *in*

have also held that whether a contract is legally enforceable or not is immaterial on the question of fraud,[9] and if a party to an illegal contract has been defrauded, he may have his action in fraud although he could not enforce the contract.[10] Such reasoning is in accord with the South Carolina decisions which distinguish between fraud and contract causes of action on contracts forbidden by the statute.[11]

■ The relative culpability of the parties is an additional factor in determining whether or not to allow recovery for fraud on an illegal promise. Courts have entertained lawsuits growing out of an illegal transaction where the parties were not *in pari delicto*, especially where the illegality of the contract depended on the existence of peculiar facts which were known to the defendant but unknown to the plaintiff, and the plaintiff had no intention of violating the law.[12] Such is the case here where the evidence indicates that the insurance agents knew the rebate provision was unenforceable and that Defender's officers were unaware of the statute or the illegality of the promise and had no intention to break the law.

It is clear from the foregoing discussion that there are circumstances under which the public interest would be subserved by granting rather than denying relief to a party to an illegal contract.[13] The circumstances here present such a scenario. The anti-rebate statute is a regulatory statute designed to prohibit insurers from offering discriminatory rates to members of the same class of insureds and to promote open, fair dealings between insurance companies and their customers. In this case an insurance company has misled an insured as to the enforceability of the terms of the coverage. Imposing liability for fraud on an insurer whose agents have knowingly offered prohibited rebates would serve rather than frustrate the purposes of the statute.

Accordingly, the Court concludes that the anti-rebate statute [14] does not as a matter of law preclude the plaintiff's right to rely on Northwestern's agents' fraudulent misrepresentation.

## III.

■ Northwestern next contends that the jury improperly measured actual damages by awarding an amount totaling all premiums paid. It argues that, because the alleged promise was to rebate the dif-

pari delicto, patient could recover damages for injuries caused by doctor's negligent performance of illegal abortion); *A.M. Kidder & Co. v. Clement A. Evans & Co.*, 111 Ga.App. 484, 142 S.E.2d 269 (1965) (broker's non-willful violation of Federal Reserve Board regulation did not preclude his recovering for fraud).

9. *R.D. Reeder Lathing Co. v. Cypress Ins. Co.*, 3 Cal.App.3d 995, 84 Cal.Rptr. 98 (1970); *Dillon v. Sumner*, 153 Cal.App.2d 639, 315 P.2d 84 (1957).

10. *Symcox v. Zuk*, 34 Cal.Rptr. 462, 221 Cal. App.2d 383 (1963).

11. *Crosby v. Metropolitan Life Ins. Co.*, 167 S.C. 255, 166 S.E. 266 (1932); *see also Hood v. Life & Casualty Ins. Co.*, 173 S.C. 139, 175 S.E. 76 (1934) and *Aiken Petroleum Co. v. National Petroleum Underwriters, etc.*, 207 S.C. 236, 36 S.E.2d 380 (1945).

12. *Oakes v. Guarantee Ins. Co.*, 573 S.W.2d 899 (Tex.Civ.App.1978).

13. In *White v. Commercial & Farmers' Bank*, 66 S.C. 491, 45 S.E. 94 (1903), the court reasoned that to further justice, recovery of property transferred under an illegal contract would be allowed. In *In re Leasing Consultants Inc.*, 592 F.2d 103 (1979), the court allowed recovery of payments made to a law firm which received such payments in violation of a federal conflict of interest statute because recovery enforced a public policy forbidding the illegal contract and benefitted those who were blameless. In *Enlow & Son, Inc. v. Higgerson*, 201 Va. 780, 113 S.E.2d 855 (1960), where a defendant subcontractor in a breach of contract action defended on the ground the contract was illegal because he was unlicensed at the time of contracting, the court concluded "to deny relief to a licensed contractor who has entered into a contract with an unlicensed contractor will not further the purposes of the statute but will benefit the primary wrongdoer." 113 S.E.2d at 860.

14. The defendant also relies on Code Sections 38–57–120 and 38–57–130(3), which similarly proscribe premium rebates. Although the defendant did not expressly rely on these statutes at the directed verdict stage, the Court has considered them together with section 38–55–50. The ruling, and the grounds therefor, on section 38–55–50 apply to sections 38–57–120 and 38–57–130(3) as well.

ference between the premiums paid on a policy of $8 Million and those payable on a lower amount of coverage, Defender is entitled to recover only $13,314.22, or the difference between premiums for the initial $8 Million coverage and the $7 Million coverage Defender requested nine months later. Northwestern argues that Defender received the benefit of the full $8 Million life insurance coverage during the period the policy was in force and it would thus be inequitable to permit Defender to recover all premiums paid. The Court disagrees. There was sufficient evidence presented at trial from which the jury could have concluded that but for the fraudulent promise to rebate premiums, Defender would not have then purchased the Northwestern policy. The jury's award is consistent with such a conclusion.[15]

## IV.

Northwestern next argues for judgment n.o.v. on the ground that the $5,000,000 punitive damages award is clearly excessive and the result of passion, caprice or prejudice on the part of the jury. The Court agrees.

■ In a diversity action, state substantive law determines the circumstances justifying punitive damages. Federal law governs review of the jury award. *Shamblin's Ready Mix, Inc. v. Eaton Corp.*, 873 F.2d 736, 738 (4th Cir.1989). The court can reduce an excessive verdict and enter judgment for an appropriate amount of punitive damages to remedy the wrong committed by the defendant without requiring a new trial. This procedure permits the court to take into account all of the circumstances justifying punishment and deterrence. *Id.* at 743.

■ In South Carolina, punitive damages are recoverable if a defendant acts recklessly, willfully or wantonly. *Camp v. Components, Inc.*, 285 S.C. 443,

330 S.E.2d 315 (Ct.App.1985); *Fox v. Munnerlyn*, 283 S.C. 490, 323 S.E.2d 68 (Ct. App.1984). The Court first concludes there is sufficient evidence from which the jury could have found that Northwestern's agents acted recklessly, willfully and wantonly in promising the premium rebate. Following Defender's demand and Northwestern's refusal to rebate, Jack Caroway, a former Northwestern agent, informed Donald J. Schuenke, Northwestern's president, by letter that he and other agents had intentionally misrepresented to Defender that there would be no "loss of premium" should Defender decide to reduce coverage at a later date. This misrepresentation was made because the agents believed that Defender was unwilling to purchase the policy at that time without the assurance of a rebate. They were eager to make the sale and hoped that Defender would not request a reduction in coverage after purchasing the policy. Whether or not the promise would or could be honored later if Defender sought reduced coverage was irrelevant to them. This conduct manifests recklessness, willfulness and wantonness.

■ Once punitive damages are deemed to be proper, the amount to be assessed depends on the character of the wrong committed, the punishment that should be applied and the ability of the defendant to pay. *Mylin v. Allen–White Pontiac, Inc.*, 281 S.C. 174, 314 S.E.2d 354 (App.1984). An excessive verdict, however, must be set aside if the court "is of the opinion that the verdict is against the clear weight of the evidence, or is based on evidence which is false, or will result in a miscarriage of justice." *Johnson v. Parrish*, 827 F.2d 988, 991 (4th Cir.1987).

■ Considering the circumstances, the Court concludes that the $5,000,000 punitive damages award is not justified and must be set aside. Several factors lead to

---

**15.** The evidence arguably supports a cause of action for fraudulent inducement to enter a contract. *See Darby v. Waterboggan of Myrtle Beach, Inc.*, 288 S.C. 579, 344 S.E.2d 153 (Ct. App.1986). If Defender had brought such a cause of action, it could have been returned to the *status quo ante;* that is, it could have recovered the consideration it paid plus any foreseeable incidental damages incurred in reliance on the fraudulent misrepresentation. *See Carrigg v. Blue*, 283 S.C. 494, 323 S.E.2d 787 (App.1984); *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, 279 S.C. 468, 309 S.E.2d 763 (App. 1983).

the conclusion that the award, almost 50 times greater than the actual damages award, is so grossly inflated as to constitute a miscarriage of justice. *See Johnson*, 827 F.2d at 991. First, the harm Defender suffered did not involve personal injury or property damage but only a loss of approximately $110,000 by a company with estimated annual gross sales of approximately $35 Million.[16] Next there was no evidence presented that the agents' actions constitute Northwestern's business practice or that Northwestern knew of or condoned fraudulent practices by its agents; to the contrary, the evidence indicates that Northwestern penalizes its agents for their errors and omissions by reclaiming commissions and seeking indemnification. This case appears to be an isolated incident created by overzealous agents which is not likely to be repeated.[17] Moreover, the sophistication and education of Defender's officers makes it unjust for the Court to allow the plaintiff to be rewarded with such a punitive damages windfall. Indeed, Bill Mitchum, Defender's financial officer who attended law school for five quarters and was privy to the negotiations between Defender and Northwestern's agents, testified he found it hard to believe Northwestern would actually rebate the premium if coverage were subsequently reduced.

Under the circumstances, the Court concludes that a punitive damages award of Ten Thousand ($10,000) Dollars, when coupled with the recovery of all premiums paid in reliance on the fraudulent promise, is sufficient to serve the purposes of punishment, deterrence and vindication of the plaintiff's rights. Although this amount is insubstantial when viewed in light of the defendant's ability to pay, the Court is convinced "it is sufficient to punish the company for its vicarious liability and to deter future misconduct by relatively low ranking employees." *Shamblin's Ready Mix*, 873 F.2d at 743.[18]

Northwestern finally argues that the excessive punitive damages award violates due process. Because the Court has ruled that the punitive damages award is clearly excessive and cannot stand, it declines to decide whether it also violates due process.

▬ In accordance with Federal Rule of Civil Procedure 50(c), the Court conditionally grants the defendant's motion for a new trial solely on the issue of punitive damages should the judgment n.o.v. be vacated or reversed on appeal. The Court has discretion to grant a new trial if the size of the verdict is either excessive or against the clear weight of the evidence. *Virginian Ry. Co. v. Armentrout*, 166 F.2d 400 (4th Cir.1948). Accordingly, the Court conditionally grants the motion for a new trial on the ground that the jury's punitive damages verdict of $5,000,000 is so excessive as to represent whim or caprice on the jury's part. *See Martin v. Fleissner GMBH*, 741 F.2d 61, 65 (4th Cir.1984).

## V.

▬ Defender's motion is for an award of prejudgment interest. Northwestern has not filed any opposition to the motion. Under South Carolina law, an award of prejudgment interest is proper only if a claim is liquidated. *Llewelyn v. Dobson Bros.*, 274 S.C. 177, 262 S.E.2d 726

---

16. This figure is based on the testimony of Hollis Cone, Defender's president, who estimated that the company's $2 to $3 Million in annual sales to Springs Mills represents six or seven percent of Defender's total annual sales.

17. The penalties imposed by various regulatory statutes which prohibit, among other things, an insurance agent's promising a discriminatory rebate, serve as an additional deterrent to any repetition of the conduct here. *See, e.g.*, S.C. Code Ann. §§ 38–2–10 and 38–55–60 (1976, as amended). Because punitive damages have been deemed to serve the same purpose as civil penalties, *Shamblin's Ready Mix*, 873 F.2d at

741–42, *citing Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), the need to resort to punitive damages alone as a means to stop certain conduct decreases when civil penalties are also available.

18. As is noted in *Shamblin's Ready Mix*, the imposition of punitive damages vicariously has been criticized as inconsistent with the deterrence goal of punitive damages because it punishes "not based on opprobrious conduct but on the mere legal relationship between the offending individual and the employer." 873 F.2d at 743 n. 4.

(1980). A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty. *Dibble v. Sumter Ice & Fuel Co.*, 283 S.C. 278, 322 S.E.2d 674 (App.1984). The Court may award prejudgment interest on a liability to pay money from the time when, either by operation of law or by agreement of the parties, the payment was demandable, if the sum is certain. *Southern Welding Works, Inc. v. K & S Construction Co.*, 286 S.C. 158, 332 S.E.2d 102 (Ct.App.1985). The plaintiff's complaint alleges that Defender would not have purchased the policy but for the fraudulent promise of Northwestern agents to rebate premiums.[19] By letter dated March 25, 1987, Defender's president requested the refund of all premiums paid, a sum certain totalling One Hundred Six Thousand, Five Hundred Thirteen and 74/100 ($106,513.74) Dollars. This is the precise amount the jury awarded as actual damages. Defender is thus entitled to prejudgment interest on this amount at the statutory rate of 8¾ percent per annum computed from March 25, 1987, the date it made the premium refund demand. *See* S.C.Code Ann. § 34–31–20 (1976, as amended).

Accordingly, the Court sets aside the jury's punitive damages verdict and directs that judgment be entered for the plaintiff in the amount of Ten Thousand ($10,000) Dollars in punitive damages. In addition, the Court conditionally grants the defendant's motion for a new trial on the sole issue of punitive damages pursuant to Federal Rule of Civil Procedure 50(c). The defendant's remaining motions are denied. Finally, the plaintiff's motion for prejudgment interest is granted.

IT IS SO ORDERED.

---

**19.** For fraudulent inducement to enter a contract, the purchaser may elect to recover the consideration paid. *Carrigg v. Blue*, 283 S.C. 494, 323 S.E.2d 787 (App.1984).